In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1301

Horacio U. Montenegro,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-C-195--Rudolph T. Randa, Judge.


Argued November 1, 2000--Decided April 16,
2001



   Before Cudahy, Coffey, and Easterbrook,
Circuit Judges.

   Cudahy, Circuit Judge.  Horacio
Montenegro appeals a dismissal of his 28
U.S.C. sec. 2255 motion for failure to
file within the one-year limitations
period. We affirm.

   On October 24, 1995, a grand jury
returned a one-count indictment against
Horacio Montenegro and two others,
charging them with conspiracy to
distribute and possession with the intent
to distribute more than 500 grams of
cocaine, in violation of 21 U.S.C.
sec.sec. 841(a)(1) and 846 and 18 U.S.C.
sec. 2. Pursuant to a plea agreement with
the government, Montenegro entered a plea
of guilty, and was sentenced to 90 months
imprisonment. The district court entered
judgment on the conviction and sentence
on April 19, 1996. On March 2, 1998,
Montenegro filed a motion pursuant to 28
U.S.C. sec. 2255, which the district
court dismissed on June 30, 1998. The
court held that because Montenegro filed
this motion 22 months after his
conviction and sentence became final, it
was barred by the one-year statute of

limitations embodied in sec. 2255. The Antiterrorism and Effective Death Penalty Act of 1996 added a limitations period to sec. 2255 motions, and required federal prisoners who wished to appeal final orders on sec. 2255 motions to obtain a certificate of appealability from the court of appeals. See 28 U.S.C. sec.sec. 2255, 2253. Following Montenegro's petition to this court, we granted him a limited certificate of appealability on the questions of when the one-year time limit began to run and whether Montenegro had filed his sec. 2255 motion within that limit. Montenegro argued that the limitations period began to run in mid-1997, when he first discovered that his appeal had not been filed. Finding the record devoid of adequate information to determine the merits of the appeal, this court issued an order remanding the case to the district court for an evidentiary hearing on the issue of Montenegro's diligence./1

   The district court held an evidentiary hearing on December 16, 1999, at which Montenegro called two witnesses: his trial counsel, Nikola Kostich, and himself. Kostich testified that he did not recall Montenegro's instructing him to file a notice of appeal, and testified that, if he had been instructed to file an appeal, he would have done so. Kostich also testified that, based on his practice and routine, the lack of notes or documents in his file about an appeal meant that he had not been directed to file one. Montenegro testified that he instructed Kostich to file a notice of appeal immediately after his sentencing. Montenegro also testified that while he was incarcerated following his sentencing, he asked an inmate to write a letter to Kostich requesting transcripts of his plea and sentencing; he testified that he did not dictate the contents of the letter because he can speak little English. The letter was not intended to inquire about an appeal, and it did not do so. In response to the letter, Kostich sent Montenegro a copy of the docket sheet. Montenegro was later transferred to another prison about one year after his sentencing. There, several inmates informed Montenegro that appeals could take a year or longer, and so Montenegro simply waited to hear the outcome of his appeal. He did not determine that an appeal had not been filed until the

middle of 1997, and he did not file a sec. 2255 motion until March 1998.

Following the evidentiary hearing, the district court decided that Montenegro had not instructed his counsel to file a notice of appeal, and that he had not exercised due diligence in determining that an appeal of his case had not been filed. On the first issue, the court reasoned that Kostich is an experienced criminal defense attorney with an excellent reputation, and thus credited his testimony that, if someone instructs him to file a notice of appeal, he will do so. It also reasoned that it would not "make sense" for Kostich not to appeal a case and thereby lose a paying client. As to the issue whether Montenegro exercised due diligence, the district court determined that he did not. The only contact Montenegro made with his lawyer was through the September 2, 1996 letter, in which he did not inquire about the status of his appeal. The court also cited Davenport v. A.C. Davenport & Son Co. in concluding that lack of sophistication is irrelevant to due diligence inquiries. 903 F.2d 1139 (7th Cir. 1990), overruled on other grounds by Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir. 1990). The court concluded that Montenegro was not diligent because: 1) when he received a docket sheet in response to his request for a transcript, that should have been a red flag that the appeal was not being processed; 2) he did not call or write to Kostich or the court to inquire about his appeal; 3) any language barrier would not have prevented Kostich from determining from the docket sheet--on which there was no record of an appeal--that an appeal had not been filed, particularly because someone assisted him in translating the docket sheet; and 4) the 9/2/96 letter did not inquire about the status of an appeal. Montenegro filed a notice of appeal and a motion for issuance of a certificate of appealability. The district court issued a certificate of appealability.

I.   Ineffective Assistance of Counsel

Although this court remanded this case for an evidentiary hearing solely on the issue of Montenegro's diligence, the district court also made a finding that Kostich had not provided ineffective

assistance of counsel, and that is the issue on which the district court certified the appeal. Montenegro argues that Kostich failed to provide effective assistance of counsel in violation of the Sixth Amendment by failing to file an appeal, failing to consult with Montenegro about the merits of his appeal and failing to consult with Montenegro about how to obtain a transcript of his plea and sentencing proceedings. To prevail on an ineffective assistance of counsel claim, Montenegro must show that his attorney's performance "fell below an objective standard of reasonableness" and that the deficient performance caused him prejudice. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Boyles, 57 F.3d 535, 550 (7th Cir. 1995). Failure to file an appeal when one has been requested constitutes a per se violation. See Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994). The district court found that Montenegro did not ask Kostich to file an appeal, and that therefore Kostich did not render ineffective assistance by not filing one. The court reasoned that Kostich was an experienced criminal defense attorney with an excellent reputation, and it had no reason to doubt Kostich's testimony that--if someone instructs him to file a notice of appeal--he will do so. Second, the court reasoned, it made no sense that Kostich, if asked to appeal, would reject a paying client. Third, if there had been a discussion, there would have been some record of it in Kostich's file.

The court concluded that Montenegro did request transcripts in a letter sent to Kostich, and that Kostich neither sent the transcripts nor told Montenegro how he might obtain them. It also concluded that, because of the lack of notes in Kostich's file, there had been no discussion of the possibility of appeal between Kostich and Montenegro. We are not satisfied that the court's evidentiary proceeding addressed all the concerns of Montenegro's ineffective assistance claim, particularly in light of the requirement that a criminal defense attorney consult with his client if there are any nonfrivolous grounds for appeal. See Roe v. Flores-Ortega, 120 S.Ct. 1029, 1036 (2000). But we need not go into this potentially contentious issue, because Montenegro loses on the

grounds of timeliness.

II.  Due Diligence and 28 U.S.C. sec. 2255 para.6(4)

The parties have ignored the limits of the district court's certificate of appealability, and made substantial arguments on the due diligence issue./2 Further, this court remanded the case specifically for consideration of Montenegro's due diligence--which was the apparent focus of the district court's proceedings--and thus we will now address that issue.

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), there was no statute of limitations for filing a sec. 2255 motion. Under the new law, a one-year limitation period applies. The period runs from the latest of four events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. sec. 2255 para.6. Montenegro argues that his claim is not time-barred because the dates described in (3) and (4) are within the one-year limitations period. We shall first address his argument under (4) that he could not have discovered the facts supporting his claim prior to March 1997. Whether Montenegro could have discovered the facts earlier depends on how "due diligence" is defined.

This court has been unable to find any appellate decisions setting forth the standard of review of a district court's decision concerning due diligence in the

context of sec. 2255. The government argues that the appropriate standard of review should be similar to the standard applied to Rule 33 cases: abuse of discretion. Rule 33 governs decisions on motions for a new trial based on newly discovered evidence, in which courts apply an abuse of discretion standard of review. See Fed. R. Crim. P. 33; United States v. Woolfolk, 197 F.3d 900, 904-05 (7th Cir. 1999); United States v. Austin, 103 F.3d 606, 608-11 (7th Cir. 1996). In support of using this analogy, the government notes the "high degree of similarity between sec. 2255 and Rule 33," in that both have a limitation period, affect the liberty interests of the defendant and require a showing that the evidence could not have been discovered sooner through due diligence. But the analogy is incomplete. Rule 33 provides that the court, on motion of a defendant, may grant a new trial to that defendant "if the interests of justice so require." The decision is therefore committed to the "sound discretion of the trial judge." Woolfolk, 197 F.3d at 904. By contrast, sec. 2255 provides that the limitations period will run from the latest of four specified events. Nothing in the language implies discretion committed to the trial judge. Rather, it involves a finding of fact--whether due diligence was exercised--followed by a determination that the factual scenario satisfies the strict confines of the statute. Thus, clear error review is more appropriate.

The better analogy for a due diligence finding on a sec. 2255 motion is to Rule 52(a) of the Federal Rules of Civil Procedure, which "assigns to the trial judge the responsibility of determining not only the historical events that are relevant to how the case should be decided but also the legal significance of those events." See Mucha v. King, 792 F.2d 602, 605 (7th Cir. 1986). This means that legal characterizations, such as negligence, possession, ratification, principal place of business and the like are facts to which the clearly erroneous standard applies. See id. "Due diligence" is one such characterization, and we therefore review the district court's decision on this issue for clear error. It is undisputed that, if Montenegro used due diligence to discover Kostich's failure to file the appeal, he timely

filed his sec. 2255 motion. This has nothing to do with discretion, or the abuse of it.

Montenegro argues that the Supreme Court's interpretation of "due diligence" in 28 U.S.C. sec. 2254(e)(2)(A)(ii) should apply to an interpretation of "due diligence" in sec. 2255. See Williams v. Taylor, 120 S.Ct. 1479, 1490 (2000). Williams, a sec. 2254 case, held that "due diligence" is considered "in light of the information available at the time" and that it does not depend on whether the prisoner's efforts would have been successful at uncovering the underlying facts. See 120 S.Ct. at 1490. The analogy to sec. 2254 is probably appropriate, even though the relevant sec. 2254 provision applies to a determination whether an applicant is excused from a failure to develop the factual basis for the claim in state court proceedings. See 28 U.S.C. sec. 2254(e)(2). But we need not decide that here, because even under Williams--which hints that a prisoner's special circumstances may have an impact on the due diligence inquiry--the district court's due diligence finding would stand. As we conclude below, Montenegro failed to meet even the most lenient standard of diligence.

In Wims v. United States the Second Circuit addressed a case similar to Montenegro's, and concluded that "[t]he proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." 225 F.3d 186, 190 (2d Cir. 2000). Thus, the court held, an evaluation of whether due diligence was exercised must take into account the conditions of confinement and the reality of the prison system. See id. at 191 (citing Easterwood v. Champion, 213 F.3d 1321 (10th Cir. 2000)). We agree with the Second Circuit; a due diligence analysis under sec. 2255 para.6(4) requires consideration of a prisoner's individual circumstances. Thus, we reject the reliance by both the district court and the government on Davenport v. A.C. Davenport & Sons Co., 903 F.2d 1139 (7th Cir. 1990). First, Davenport addressed the issue whether the statute of limitations should be equitably tolled, which is a wholly different inquiry from whether the defendant in a habeas proceeding fits

within the sec. 2255 para.6(4) exception to the one-year statute of limitations. We discuss the issue of equitable tolling in Section IV of this opinion. For now, it is sufficient to say that Davenport, a securities fraud case in which the defendant sought equitable tolling, does nothing to assist our evaluation of a habeas petitioner's diligence under sec. 2255 para.6(4).

Montenegro next argues that his lack of sophistication should support a finding that he exercised due diligence. This argument places Davenport (cited by the government) at odds with two state court cases (cited by Montenegro)--and we hardly need to address a conflict between a distinguishable case and a non-precedential case. Neither is relevant here. The government argues that, under Davenport, Montenegro's lack of sophistication is irrelevant to the due diligence inquiry. Montenegro argues that Davenport is distinguishable because it is a securities case and because the plaintiff was represented by counsel throughout the relevant securities transaction. He is correct. "Due diligence" in the securities regulation context is a far cry from "due diligence" in a criminal procedure context. We need not reach the lack of sophistication issue, however, because--even taking Montenegro's lack of sophistication into account--we find that he did not exercise due diligence. We need say only that it is possible, under some circumstances, that lack of sophistication could become part of a due diligence analysis, because the limitations with which a prisoner is faced might influence how quickly facts could have been discovered. See Wims, 225 F.3d at 190-91. But the facts of the case before us indicate that the district court could reasonably have concluded that Montenegro did not exercise due diligence, regardless of the standard of review or the level of deference due to the district court. That an appeal had not been filed was a matter of public record, "which reasonable diligence could have unearthed." Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000). About six months after his conviction and sentence were final, Montenegro had the docket sheet that revealed that an appeal in his case had not been filed, and he never asked Kostich about the appeal. On the basis of these facts, the district court

did find that, even with the language barrier and other difficulties faced by Montenegro, due diligence would have revealed that an appeal had not been filed. We agree.

III.  Flores-Ortega and 28 U.S.C. sec. 2255 para.6(3)

Montenegro next argues that his motion is timely under sec. 2255 para.6(3) because a right newly recognized by the Supreme Court is retroactively applicable to his case on collateral review. Section 2255 para.6(3) provides that the one-year limitation period will begin running on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Montenegro bases his argument on the Supreme Court's holding in Roe v. Flores-Ortega, 528 U.S. 470 (2000). There, the Court held that defendants' counsel have "a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. The government attempts to play down the impact of Flores-Ortega by arguing that that decision merely provides instruction on the application of the well-established Strickland test to a particular fact situation. To prevail on an ineffective assistance claim based on counsel's failure to file a notice of appeal, a defendant must satisfy the familiar test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under Strickland, the defendant must first demonstrate that his counsel's performance was deficient by showing that it was unreasonable under prevailing professional norms. See id. at 688.

It is neither necessary nor appropriate for us to decide at this time whether the portion of Flores-Ortega on which Montenegro relies establishes a "newly recognized" rule of constitutional law, because under sec. 2255 para.6(3) the decision whether a rule (if new) should be applied on collateral attack is one to

be made by the Supreme Court itself. Section 2255 para.6(3) is in this respect identical to 28 U.S.C. sec. 2244(b)(2)(A), which allows the filing of a second or successive collateral attack only if a new right has been "made retroactive to cases on collateral review by the Supreme Court." We have held that for purposes of sec. 2244(b)(2)(A), the retroactivity decision must be made by the Supreme Court, rather than by courts of appeals. See Talbott v. Indiana, 226 F.3d 866, 867 (7th Cir. 2000); Bennett v. United States, 119 F.3d 470 (7th Cir. 1997). Contra West v. Vaughn, 204 F.3d 53, 59-63 (3d Cir. 2000). See also Taylor v. Cain, 218 F.3d 744 (5th Cir.) (mem.), cert. granted, 121 S.Ct. 654 (2000). Unless and until the Supreme Court itself declares that Flores-Ortega not only establishes a new rule but also that this rule applies retroactively on collateral review, Montenegro cannot take advantage of sec. 2255 para.6(3) to obtain additional time for initiating a collateral attack.

IV.   Equitable Tolling

   Because sec. 2255's tolling period is procedural, not jurisdictional, the period may be equitably tolled. See United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000). Equitable tolling is "the judge-made doctrine, well-established in federal common law, that excuses a[n] [un]timely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." Taliani v. Chrans, 189 F.3d 597, 597 (7th Cir. 1999). In Taliani, we noted that "it is unclear what room remains for importing the judge-made doctrine of equitable tolling" into sec. 2244 claims, given the express tolling provisions incorporated in the statute. 189 F.3d at 598. The same goes for sec. 2255, and we continue to decline to reach the issue, since it is clear that Montenegro should be denied relief under this doctrine as well.

   Montenegro argues that the statute of limitations should be equitably tolled for him in light of the barriers he faced in discovering the lack of effective assistance of counsel. He argues that the barriers he faced in learning that his

appeal had not been filed constitute extraordinary circumstances-- circumstances of the kind that warrant equitable tolling. These are the same grounds that Montenegro hoped to use to excuse his lack of due diligence: he never got a response from Kostich to his letter; he was unable to understand the docket sheet Kostich mailed to him because of the language barrier; he was never consulted on the possibility of an appeal; he had limited education and a lack of knowledge of the United States legal system; and he was being transferred from one prison to another. These do not constitute the kind of extraordinary circumstances that justify equitable tolling, which "is granted sparingly. . . . Extraordinary circumstances far beyond the litigant's control must have prevented timely filing." Marcello, 212 F.3d at 1010 (7th Cir. 2000). Montenegro's circumstances do not rise to this level. This is particularly apparent in light of the district court's due diligence finding.

V.  The (Un)availability of 28 U.S.C. sec. 2241

   Montenegro next argues that the district court erred in failing to consider whether his motion could be characterized as a motion under 28 U.S.C. sec. 2241. He argues that if sec. 2255 is an ineffective remedy, the savings clause of that provision allows a prisoner to seek relief under sec. 2241. We first note that this is the wrong forum for such an argument: one seeking a writ of habeas corpus must name his custodian as the respondent, and Montenegro cannot do that in this case because--as far as we can tell--he is incarcerated in Sandstone, Minnesota, not the Eastern District of Wisconsin. Second, even if this were the proper time and place, Montenegro's argument is misplaced. Failure to comply with the requirements of the sec. 2255 statute of limitations is not what Congress meant when it spoke of the remedies being "inadequate or ineffective to test the legality of his detention." 28 U.S.C. sec. 2255. The savings clause is not intended to save prisoners from the statutory restrictions delineated by Congress. Montenegro relies heavily on In re Davenport (a case distinct from the Davenport case earlier cited) in which we decided, inter alia, the issue whether a

federal prisoner can ever rely on 28 U.S.C. sec. 2241 to escape the bar that the AEDPA places on successive motions under 28 U.S.C. sec. 2255. 147 F.3d 605 (7th Cir. 1998). Davenport illustrates precisely why Montenegro's case is not one that would warrant recourse to sec. 2241. In Davenport, a prisoner was convicted of the use of a firearm in the commission of a drug offense in violation of 18 U.S.C. sec. 924(c). We affirmed the conviction, and later affirmed a denial of his sec. 2255 motion complaining of ineffective assistance of counsel. See Nichols v. United States, 28 F.3d 1216, 1994 WL 328296 (7th Cir. 1994) (mem.). Afterwards, the Supreme Court held in Bailey v. United States that "use" in the statute under which Nichols was convicted did not include mere possession. 516 U.S. 137 (1995). At the time Nichols brought his direct and sec. 2255 appeals, the law in this circuit was firmly settled that "use" did indeed constitute possession for the purpose of sec. 924(c). See Davenport, 147 F.3d at 610. Nichols could not use sec. 2255 to challenge his conviction on a successive motion, because Bailey did not change the law--it merely clarified it. Thus, he could not fit within one of the two requirements for successive appeals under sec. 2255./3 We concluded that "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." 147 F.3d at 611.

Even if Montenegro were complaining about a fundamental defect in his conviction or sentence, he has not been denied the opportunity to challenge it because of sec. 2255's defects or because of some change in the law following his conviction. That section gave Montenegro ample opportunity to challenge his conviction; it is through his own lack of diligence that he failed to take advantage of that opportunity. It is simple: Montenegro missed a statutory deadline, and his claim could have been heard on direct appeal. Davenport's safety net is not intended for defendants who make procedural mistakes.

VI.  Constitutionality of the sec. 2255
 Statute of Limitations

Finally, Montenegro raises two constitutional claims in hopes of resurrecting his habeas petition. He first argues that the government's interpretation of the due diligence requirement under the sec. 2255 statute of limitations violates the Due Process Clause of the Fifth Amendment. Because we have rejected the government's narrow interpretation of the due diligence requirement under sec. 2255 para.4, this is no longer an issue.

Montenegro's alternative constitutional argument is that a time limit on the use of sec. 2255 violates either the Due Process Clause of the Fifth Amendment or the Eighth Amendment if it forecloses collateral relief by an innocent person. This argument may encounter difficulties under Herrera v. Collins, 506 U.S. 390 (1993), and Lindh v. Murphy, 96 F.3d 856, 867-68, 871-74 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997), though it draws some support from dicta in decisions of other circuits suggesting that claims of "actual innocence" deserve special protection. See Triestman v. United States, 124 F.3d 361, 379-80 (2d Cir. 1997); In re Dorsainvil, 119 F.3d 245, 248 (3d Cir. 1997). Courts do not resolve constitutional challenges to federal statutes unless unavoidable, however, and here resolution is avoidable.

The sort of innocence for which the best constitutional claim to collateral relief would be available occurs when, even if the trier of fact believed everything charged in the indictment, these acts just do not constitute a crime. See Bousley v. United States, 523 U.S. 614 (1998); Davis v. United States, 417 U.S. 333 (1974). Montenegro does not make such an argument, or anything close to it. Instead he claims to be "innocent of the sentence enhancement for gun possession" because the evidence presented in support of that enhancement consisted solely of the testimony of his co-conspirator, whose statements, according to Montenegro, the judge should not have believed. His claim, in other words, concerns a supposed error in the application of the Sentencing Guidelines, and arguments of this sort generally are not appropriate even for timely collateral review. See Scott v. United States, 997 F.2d 340 (7th Cir. 1993).

Given the long history of judicial discretion over sentencing in non-capital offenses--until the Sentencing Reform Act of 1984 added 18 U.S.C. sec. 3742(a), there was essentially no direct appellate review of non-capital sentences, let alone collateral review of them--there is no plausible constitutional argument that a prisoner must be given an indefinite period to wage a collateral attack on his sentence.

Montenegro had "an unobstructed procedural shot" and he missed the target; nothing in the statute itself made the remedy inadequate, and nothing in the statute violated Montenegro's rights, constitutional or otherwise. See Davenport, 147 F.3d at 609.

For the foregoing reasons, we AFFIRM the district court's denial of Montenegro's motion.

/1 Section 2255 para.6(4) states that the time limit begins running from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

/2 The specification of issues in a certificate of appealability is non-jurisdictional. See Owens v. Boyd, 235 F.3d 356, 358 (7th Cir. 2000); Young v. United States, 124 F.3d 794, 798-99 (7th Cir. 1997).

/3 Recall that, under sec. 2255, a prisoner can bring a successive motion only if it contains newly discovered evidence of innocence or involves a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court.