Dale JONES, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 99–3540.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 8, 2001.

Decided Sept. 17, 2001.

Before Hon. RIPPLE, Hon. MANION, and Hon. ILANA DIAMOND ROVNER, Circuit Judges.

## ORDER

Dale Jones moved under 28 U.S.C. § 2255 to set aside his racketeering conviction, but the district court dismissed the motion as untimely. Mr. Jones argues that the district court misapplied the one-year statute of limitations of § 2255 ¶ 6 by miscalculating the beginning date of the limitations period. Because we conclude that the present record lacks an adequate foundation for finding Mr. Jones's motion untimely, we vacate and remand.

## I.

Mr. Jones pleaded guilty to one count of racketeering, 18 U.S.C. § 1962, and on October 24, 1997, received a 168–month prison sentence. He did not file a direct appeal. In his § 2255 motion, postmarked July 1, 1999, and file-stamped by the district court on July 7, Mr. Jones presses several theories of ineffective assistance of counsel and disputes the computation of his sentence. Specifically, Mr. Jones challenges his attorney's preparedness, his failure to object to matters at sentencing, and his failure to file a direct appeal upon request. Additionally, Mr. Jones asserts that the district court miscalculated his base offense level when computing his guideline imprisonment range.

In the district court Mr. Jones maintained that his § 2255 motion was timely under § 2255 ¶ 6(4), which starts the statute of limitations on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Mr. Jones alleged that his trial attorney failed to file a direct appeal despite a request at an unspecified time to do so, and he added that he filed his § 2255 motion "forthwith" upon discovering this fact. He did not discuss the timeliness of his other claims or offer further information to excuse his delay in presenting them.

The district court sua sponte concluded that the motion was facially untimely, having been filed almost two years after the date Mr. Jones was sentenced. Focusing on former counsel's failure to file a direct appeal, however, the court anticipated that Mr. Jones might be able to "successfully bring himself within the statutory alternative" of § 2255 ¶ 6(4). Accordingly, the court ordered both Mr. Jones and the lawyer, Nathan Diamond–Falk, to file affidavits detailing the dates and nature of any communications between them concerning Mr. Jones's purported desire to appeal.

Attorney Diamond–Falk never responded, but Mr. Jones filed a supplemental affidavit and attached a letter from his wife addressed "To Whom It May Concern." In this follow-up affidavit, Mr. Jones describes his post-sentencing conversations with Diamond–Falk about the possibility of filing an appeal, although it is unclear from the affidavit when–if at all– Mr. Jones specifically instructed counsel to file a notice of appeal. According to Mr. Jones, immediately following sentencing he asked the attorney what could be done about his case and then asked, "Can we appeal this?" Diamond–Falk reportedly replied that he did not know but that Mr. Jones should call him later. Mr. Jones says he telephoned the following day and asked "if we could appeal the decision." Diamond–Falk suggested that Mr. Jones make an appointment to discuss the matter. Mr. Jones did so, but he later called to reschedule the appointment and, according to his supplemental affidavit, "again asked Mr. Diamond–Falk to file an appeal." Diamond–Falk replied, "Just enjoy your holiday. I'll take care of it."

At this point in his supplemental affidavit, Mr. Jones "incorporates" the letter from his wife, who details her own conversations with attorney Diamond–Falk after Mr. Jones began serving his prison sentence. Stephanie Jones relates having telephoned Diamond–Falk in mid-February 1998 to inquire about appealing and being told by him on February 19 or 20 that there was "nothing he could do" because the case was "closed" and he already had "done everything he could." Ms. Jones notes also in her letter that in September 1998 she raised the subject of an appeal with attorney Mark Kusolzky, who tried several times to contact Diamond–Falk about Mr. Jones's case. Finally in

December 1998 Kusolzky verified through court records that Diamond–Falk had not filed a notice of appeal.

Mr. Jones then concludes his supplemental affidavit by noting that, after he and his wife learned from Kusolzky that an appeal had never been filed, they began arranging to obtain copies of the relevant court documents. For financial reasons, Mr. Jones maintains, they were unable to secure the needed copies until June 28, 1999. As noted earlier, Mr. Jones filed his § 2255 motion shortly thereafter in early July 1999.

Armed with this information from Mr. Jones, the district court concluded that "not later than February 20, 1998 [Mr. Jones's] wife was aware on his behalf that Diamond–Falk had not taken any action toward an appeal." The court thus reasoned that the one-year limitations period had long expired before Mr. Jones filed his § 2255 motion in July 1999, and accordingly dismissed the motion as untimely.

Mr. Jones timely moved for reconsideration, requesting that the district court construe his § 2255 motion as seeking coram nobis relief and thus not subject to the one-year statute of limitations. When the district court declined, Mr. Jones filed a "Motion for Relief from Judgment" disputing the district court's statute-of-limitations analysis. In an attached affidavit, Mr. Jones for the first time avers specifically that on the day of sentencing he explicitly instructed attorney Diamond–Falk to file an appeal. He also asserts that he was not aware that Diamond–Falk was not going to file an appeal until Kusolzky investigated the situation in late 1998. The district court denied this motion "for failure to advance any reasons justifying relief."

Mr. Jones filed a notice of appeal that brings before us the dismissal of his § 2255 motion and the denial of his motion to reconsider. We issued a certificate of appealability allowing him to challenge the timeliness issue and the underlying ineffective-assistance claim. Mr. Jones later filed another notice of appeal from the district court's denial of his Motion for Relief from Judgment, but he abandoned that appeal and so that motion is not before us.

II.

We begin by noting that our analysis of whether Mr. Jones timely filed his § 2255 motion applies only to his theory that attorney Diamond–Falk was ineffective for failing to file a direct appeal. For all other arguments–challenges to the calculation of Mr. Jones's sentence and additional theories of ineffective assistance based on his attorney's preparation and performance at sentencing–the underlying facts necessary to seek post-conviction relief were known at the time of sentencing. Thus, the statute of limitations with respect to Mr. Jones's other contentions began running when his conviction became final, and he offers no rationale that the limitations period was tolled for those arguments. Indeed, in his brief and at oral argument, counsel encouraged us to construe Mr. Jones's § 2255 motion as presenting only a claim of ineffective assistance of counsel for failure to file a direct appeal. We accept that invitation.

As to the timeliness of Mr. Jones's § 2255 motion, the one-year limitations period began to run from the latest of four dates, only one of which is relevant here: "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255 ¶ 6(4). Inquiry into due diligence focuses on when the factual predicate of a particular claim *could have been* discover-

ed; recognition of the legal significance of the facts is irrelevant, as is the time that the underlying facts were actually discovered. *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir.2000). Still, courts evaluating the timeliness of a § 2255 motion must consider "individual circumstances," which for imprisoned individuals include the conditions of confinement and the practical realities of the prison system. *Montenegro v. United States,* 248 F.3d 585, 592 (7th Cir. 2001).

■ The district court concluded that Mr. Jones had not been diligent in presenting his § 2255 motion in view of the information included in his supplemental affidavit and the attached letter from his wife. Mr. Jones was sentenced in October 1997; according to his affidavit he tried for several months to contact attorney Diamond–Falk about an appeal. The district court also relied on the letter from Ms. Jones describing the February 1998 conversation in which Diamond–Falk told her that there was "nothing he could do" and that the case was "closed." Because Mr. Jones filed his § 2255 motion in July 1999, the district court found that he had exceeded the one-year limitations period.

Mr. Jones contends that the district court erred by imputing to him the information his wife learned during her February 1998 conversation with Diamond–Falk, and by concluding that "his wife was aware on his behalf" that no appeal had been filed. We agree that this decision was precipitous. The district court did not cite, and the government has not offered, any legal authority to support imputing knowledge between spouses in situations like this. We have been unable to find any cases instructing that the district court could–or should as a matter of policy–treat spouses as one unit for purposes of ascertaining due diligence. Moreover, there is an insufficient factual basis in this particu-

lar case from which to conclude that Mr. Jones was aware of attorney Diamond–Falk's representations in February 1998. Given the truncated proceedings in the district court, the record concerning Mr. Jones's knowledge of his attorney's intentions has not been developed enough to support the district court's factual findings and its ultimate holding of untimeliness.

The government suggests that it was perfectly appropriate for the district court to impute to Mr. Jones the information in his wife's letter because of the manner in which he presented the letter to the district court. The government points out that Mr. Jones attached his wife's letter to his affidavit, filed in direct response to a question from the district court concerning the timing and substance of his communications with attorney Diamond–Falk. Further, Mr. Jones's affidavit explicitly states that he wishes to "incorporate[ ]" the attached document. Thus, the government maintains, Mr. Jones represented to the district court that he was aware of the conversations his wife had with Diamond–Falk and with the later attorney.

At first blush this seems to be a reasonable inference; the government's argument possesses a certain amount of logic. We too are tempted to ascribe great significance to Mr. Jones's incorporation of his wife's letter. But after careful consideration, we are not prepared to assume that Mr. Jones knew from his wife about attorney Diamond–Falk's February 1998 statements that the criminal case was over. Though we agree that Mr. Jones's presentation gives rise to some inference of knowledge, that inference is not conclusive and we are unwilling to fill the gap with speculation. And we cannot avoid observing that, although the document is not squarely before us, Mr. Jones filed a later affidavit accompanying his Motion for Relief from Judgment that is consistent with

his position here; Mr. Jones avers in that document that his wife did not relay the February 1998 conversation to him and that he did not discover that Diamond–Falk had not filed an appeal until late–1998 after a different attorney researched the case. This issue presents a simple factual question that can and should be uncovered with a more developed record.

The parties have spent considerable time discussing the judge-made doctrine of equitable tolling. Although we initially requested that they do so, further evaluation of the case leads us to conclude that, if equitable tolling exists independently of § 2255 ¶ 6, *see, e.g., Montenegro*, 248 F.3d at 594, Mr. Jones does not meet the very high threshold necessary to invoke the doctrine. Equitable tolling is granted sparingly, *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000), and the present situation does not present the kind of "[e]xtraordinary circumstances far beyond the litigant's control" that would warrant relief. *Id.; see also Montenegro*, 248 F.3d at 594 (refusing to apply equitable tolling despite language barrier, attorney's nonresponsiveness to prisoner's letter, prisoner's limited education and lack of knowledge of prison system, and prisoner's transfer between prisons). Thus, the district court is left to decide at what point Mr. Jones should have with due diligence discovered that his former counsel had not filed a notice of appeal. If that date is within one year of his § 2255 motion, then to ultimately obtain relief under § 2255 Mr. Jones will need to establish conclusively that he specifically instructed attorney Diamond–Falk to file an appeal. *See, e.g., Roe v. Flores–Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *Montenegro*, 248 F.3d at 590; *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir.1994).

The district court's decision is VACATED and the case is REMANDED for further proceedings.