# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-2564

TREVOR K. RYAN,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:10-cv-00295-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED JULY 12, 2011—DECIDED SEPTEMBER 16, 2011

Before BAUER, CUDAHY and TINDER, *Circuit Judges*.

BAUER, *Circuit Judge*. Trevor K. Ryan, now in federal prison for possessing marijuana with intent to distribute it, *see* 21 U.S.C. § 841(a)(1), appeals the summary denial of his motion to vacate his conviction and sentence, *see* 28 U.S.C. § 2255. He contends principally that the district court should have granted him an evidentiary hearing on his claim that one or both of his lawyers deprived him of the right to counsel by failing to comply with his

request to file a notice of appeal. Ryan challenges the district court's conclusion that his motion was untimely. We vacate the judgment and remand the case for additional fact-finding.

## I. BACKGROUND

Because the case turns on counsel's alleged failure to pursue a direct appeal, the facts underlying Ryan's conviction require little discussion. Briefly, Ryan flew a propeller plane loaded with more than 150 pounds of marijuana from California to Wisconsin; was caught; pleaded guilty to violating 21 U.S.C. § 841(a)(1); and was sentenced to 65 months' imprisonment, 3 years' supervised release, and forfeiture under 21 U.S.C. § 853 of the plane, a car, and some other items.

Critically for this appeal, neither Ryan nor his lawyers filed a timely notice of appeal from the conviction or sentence. Ryan's sentence therefore became final on March 26, 2009, when the 10-day deadline for appealing expired. On May 26, 2010, Ryan, now acting pro se, filed a motion to vacate under 28 U.S.C. § 2255, claiming in relevant part that counsel abandoned him on direct review by failing to file a notice of appeal, despite his instructions to do so. In his sworn motion and accompanying memorandum (also sworn), Ryan posed the allegation three times:

(1) "Counsel failed to file notice of appeal when requested he do so."

(2) "After sentencing, petitioner requested that defense counsel file an appeal. Defense counsel failed to file

an appeal, and failed to advise petitioner of the 10 day time constraint."

(3) "Petitioner requested at the time of sentencing that his counsel file an appeal on his behalf, and was under the impression that this was being done. . . . Petitioner was under the impression that counsel was following his wishes. It was not until months later he discovered no notice had been filed."

Ryan swore that neither his lawyers nor the district court informed him of the 10-day deadline for appeals, and the sentencing transcript bears out his allegation about the district court's omission.

Anticipating an affirmative defense that his motion to vacate was untimely, Ryan contended that the statute of limitations did not start running under 28 U.S.C. § 2255(f)(4)—which governs the limitations period for claims arising from newly discovered facts—until at least May 26, 2009, one year before he filed his motion, because a reasonably diligent prisoner would not have known before then that counsel had failed to file an appeal. Alternatively, he argued that the limitations period did not start under § 2255(f)(2)—which governs the period for motions whose filing is impeded by the government—until June 4, 2009, when he arrived at the prison where he is currently housed; he alleged in support that he was "in transit" for the first three months of his confinement, and that prison officials did not grant him access to a law library or his own legal papers during that time. Finally, in the event that the limitations period started under § 2255(f)(1) when

his conviction became final, Ryan asked the court to equitably toll the limitations period. On these timeliness issues and the substantive claim, Ryan sought discovery and a hearing.

The district court denied Ryan's motion without requesting a response from the government or further information from Ryan. The court concluded that the motion was untimely under § 2255(f)(1). The court rejected Ryan's argument for equitable tolling, explaining that even if his transit period kept him from filing a motion right away, a diligent prisoner would have done so in the nine months that followed. The court did not address Ryan's distinct argument that, under either subsection (f)(2) or (f)(4), the one-year limitations period did not start running until less than one year before he filed his motion.

Ryan sought reconsideration, reiterating his argument under subsection (f)(4), but the district court denied the motion to reconsider and denied him a certificate of appealability. This court certified Ryan's appeal on his claim that counsel abandoned him.

## II. DISCUSSION

When a defendant in a criminal case specifically instructs a lawyer to file a notice of appeal, the lawyer's failure to do so deprives the defendant of the Sixth Amendment right to counsel, regardless of whether an appeal was likely to succeed. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Peguero v. United States*, 526 U.S. 23, 28

(1999); *Rodriquez v. United States*, 395 U.S. 327, 330 (1969); *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1840 (2011); *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994). That is what Ryan claimed in the district court and argues here: he asked counsel to file a notice of appeal, and they failed to do so. If the allegation is true and the § 2255 motion is not barred on timeliness grounds, Ryan is entitled to have his criminal judgment vacated and reimposed to permit a direct appeal. *See United States v. Hirsch*, 207 F.3d 928, 931 (7th Cir. 2000); *Castellanos*, 26 F.3d at 720.

The government rightly concedes these general principles, but argues, first, that Ryan's sworn allegations were so poorly drafted that dismissing the motion without addressing the merits or calling for development of the record was proper. We disagree: Ryan clearly alleged a violation of his right to appeal by counsel. Having adequately alleged a constitutional violation, the only other question to ask is whether Ryan had personal knowledge of the facts underlying his claim and, if so, whether anything made the allegations "palpably incredible" or discovery otherwise pointless. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *see also Mahaffey v. Ramos*, 588 F.3d 1142, 1145 (7th Cir. 2009) (discussing pleading standards in habeas corpus cases), *cert. denied*, 130 S. Ct. 3503 (2010); *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) (recognizing that a movant's "verified statement alone" can count as evidence to support claims); *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (noting that 28 U.S.C. § 2255(b) allows the court

to forgo a hearing if the papers before it "conclusively show" that the prisoner is entitled to no relief). Here, the record clearly shows that no notice of appeal was filed, and Ryan would know whether and when he asked counsel to file an appeal. Moreover, there is nothing incredible about his allegations, nor is there confusion about the other evidence Ryan may need (such as an affidavit or oral testimony from counsel).[1]

The government counters that Ryan fatally contradicts himself by alleging both that he instructed counsel to appeal and that counsel failed to consult him about appealing, but a more natural reading of these allegations is that Ryan told his counsel to appeal, and counsel thereafter failed to consult him. Similarly, Ryan muddies the waters by alleging that he told counsel "[a]fter sentencing" and "at the time of sentencing" to appeal, but these seemingly contradictory allegations could mean that he made the request twice, or that he did so immedi-

---

[1] For the benefit of future litigants, we advise against using one label repeatedly deployed in the government's brief, "self-serving," to describe an opponent's sworn testimony. Important testimony of a party is usually self-serving by its nature. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). In other contexts we "long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010), *quoted in Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 660 (7th Cir. 2010). The same principle holds true for habeas corpus petitions and § 2255 motions.

ately following his sentencing hearing. And the gaps the government identifies in Ryan's allegations—precisely when Ryan asked his lawyer to appeal, who else might have witnessed his request, which officials denied Ryan access to a law library—show only that further proceedings would be helpful, not that Ryan has conclusively pleaded himself out of court. *See Machibroda*, 368 U.S. at 495 ("We cannot agree with the Government that a hearing in this case would be futile because of the apparent lack of any eyewitnesses to the occurrences alleged, other than the petitioner himself and the Assistant United States Attorney.").

Turning to the question of timeliness, Ryan contends that under 28 U.S.C. § 2255(f)(4) or (f)(2), the limitations period for filing his § 2255 motion did not start running until at least May 26, 2009, two months after his conviction became final and one year before he signed the motion. When a limitations period starts and whether it is later equitably tolled are two different questions, and if Ryan is right about the starting date, then it does not matter whether he was diligent in the months following that date. *See Montenegro v. United States*, 248 F.3d 585, 592 (7th Cir. 2001), *partially overruled on other grounds by Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001); *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). In other words, once the limitations period starts running under subsection (f)(4) or (f)(2), the movant gets the benefit of a full year even if he delays filing until the last minute of it.

Subsection (f)(4) lets the period run from "the date on which the facts supporting the claim or claims pre-

sented could have been discovered through the exercise of due diligence," unless some later date applies. So the relevant question here is how long a duly diligent prisoner would take to discover that his lawyer had not filed a notice of appeal. *See Montenegro*, 248 F.3d at 592; *Wims*, 225 F.3d at 190. We note first that due diligence does not mean "the maximum feasible diligence." *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008); *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002); *Wims*, 225 F.3d at 190 n.4. And also that courts may consider the effect of prison life on one's ability to communicate with counsel and the courts when determining the level of diligence exercised by a prisoner. *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004); *Aron*, 291 F.3d at 712; *Montenegro*, 248 F.3d at 592; *Wims*, 225 F.3d at 190-91; *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000).

No rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number. *Compare, e.g., Granger v. Hurt*, 90 F. App'x 97, 100 (6th Cir. 2004) (diligent prisoner may wait at least 2 months before even inquiring into whether counsel followed instructions), *and Wims*, 225 F.3d at 191 (5 months may be reasonable), *with Anjulo-Lopez*, 541 F.3d at 816, 819 (3-month wait is too long), *and Montenegro*, 248 F.3d at 588, 593 (10-month wait is too long, at least if prisoner receives up-to-date docket sheet after 6 months). The weight of this authority suggests that a reasonable prisoner may take at least two months—the time Ryan needs—to suspect that

counsel has dropped the ball, contact counsel or the court, wait for a response, and verify the suspicion.

As a factual matter, two months may be reasonable. After all, "a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Flores-Ortega*, 528 U.S. at 477; *see also Wims*, 225 F.3d at 190. Moreover, if Ryan is correct that no one told him of the 10-day deadline for appeals in criminal cases, he may have presumed that counsel had a longer time to act, thus increasing the time Ryan might reasonably wait before following up. Further, if we grant the government's assumption that a prisoner can learn what he needs by using the mail rather than a telephone, then the calculation of the limitations period under § 2255(f)(4) must account for several factors: the time a prisoner's outgoing letter sits in the prison mail system before it leaves; the time it takes a letter to travel to the lawyers or a court; the time the lawyers or court staff take to check the record or docket and compose a response; the time the response takes to travel back to the prison; and the time the response spends in the prison mail system before it gets to the prisoner. All that can take weeks, even assuming that court staff— let alone a lawyer who has already failed to file a requested notice of appeal—respond right away. Add to that the fact of Ryan's transit from prison to prison, and the problem of mail-forwarding enters the picture. In any event, the district court need not decide precisely how long is too long if it can safely say that, wherever the line is, Ryan lies on one side or the other.

If we held that two months is always too long to learn the facts, we would effectively be requiring the first-time prisoner to anticipate counsel's failure to comply with his request (not to mention counsel's own constitutional obligation), and prepare for it by writing to counsel within days of sentencing, thus overcoming any postal delays. Such a holding might alternatively tell prisoners to presume the worst, skip writing their lawyers, and start pestering us or the district courts for status updates immediately after sentencing. Further, the savviest prisoners might glean from such a holding that they should avoid the mail altogether and conduct every bit of important business by phone. All these possibilities illustrate hyper-vigilance, which the law does not require, rather than due diligence, which it does. We recognize that at some point, the reasonably diligent prisoner will contact counsel, ask how the appeal is going, and either receive an honest response or infer from counsel's silence that something is amiss (and then follow up with the court). But this is a fact-intensive inquiry and, here, that point probably lies somewhere beyond two months given Ryan's status as a first-time offender, the court's failure to notify him of the time to appeal, and the limited ability of prisoners—especially those in transit—to communicate freely by mail with those outside the prison.

Finally, we recognize that further factual development need not involve the full panoply of discovery techniques or even a hearing. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Lafuente*, 617 F.3d at 946-47. The district court could, for example, instruct Ryan to supply missing

details in a supplemental affidavit or permit the government to submit an affidavit from counsel. *See Lafuente,* 617 F.3d at 947; *see also Bruce,* 256 F.3d at 596 ("The district court ordered Mr. Bruce to supplement his motion with additional facts supporting his claim.") (footnote omitted). Depending on what Ryan and/or his attorneys say, this approach might obviate the need for oral testimony or further discovery.

## III. CONCLUSION

We VACATE the district court's judgment and REMAND the case for additional proceedings.