# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————————

No. 04-2632

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Juan Ledezma-Rodriguez, also | * | |
| known as Roberto Hurtado | * | |
| Madrigal-Guzman, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: April 13, 2005
Filed: September 13, 2005

———————————

Before MURPHY, HANSEN and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Juan Ledezma-Rodriguez ("Ledezma") filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that one of his attorneys provided ineffective assistance by filing a motion to withdraw guilty pleas against his wishes and that two of his attorneys provided ineffective assistance by failing to explain his obligations under a plea agreement and to facilitate his desire to cooperate

with law enforcement. The district court[1] denied Ledezma's § 2255 motion without an evidentiary hearing. Ledezma appeals the district court's decision not to hold an evidentiary hearing. We affirm.

## I.    BACKGROUND

Ledezma was charged in a third superceding indictment with one count of illegally reentering the United States, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), two counts of illegally possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 922(g)(5)(A) (these three counts are referred to collectively as the "non-drug counts"), one count of possessing with the intent to distribute a mixture or substance containing more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), one count of possessing with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiring to distribute more than 500 grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. On February 26, 2001, Ledezma and the Government executed a plea agreement related to the three non-drug counts charged in the third superceding indictment. Pursuant to the plea agreement, Ledezma agreed to plead guilty to one count of illegally possessing a firearm and the Government agreed to drop the other two non-drug counts. The plea agreement did not prevent the Government from proceeding to trial on the three drug counts or restrict the Government from pursuing other criminal offenses.

On March 22, 2001, Ledezma and the Government executed a plea agreement ("March plea agreement") with respect to the three drug counts. Pursuant to the March plea agreement, Ledezma agreed to plead guilty to the count of possessing

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

with the intent to distribute cocaine. He also agreed to stipulate to career offender status as defined by U.S. Sentencing Guidelines Manual § 4B1.1(B). Finally, he agreed to a drug quantity of at least 500 grams of cocaine and agreed to cooperate with the Government in the investigation and prosecution of others. For its part, the Government agreed to drop the remaining two drug counts, not to charge Ledezma in the Southern District of Iowa with any other federal narcotics offenses, and, if Ledezma provided substantial assistance to law enforcement, to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1. In a Statement by Defendant in Advance of Plea of Guilty, Ledezma indicated that he had reviewed the plea agreement with his attorney and that he had the services of an interpreter to interpret the plea agreement.

At the change-of-plea hearing, the district court conducted the usual Rule 11 colloquy, which included asking Ledezma whether the plea of guilty had been forced or coerced, whether he understood the range of sentences he faced, whether he was satisfied with the services of his attorney, and whether he had read and understood the terms of the March plea agreement. With the benefit of both an attorney, Norma Nuñez, who spoke Spanish, and a Spanish interpreter, Ledezma answered each of these questions to the satisfaction of the district court.[2] Ledezma then pled guilty to possession with the intent to distribute cocaine and admitted to a drug quantity of at least 500 grams of cocaine.

---

[2]The district court sought to ensure that Ledezma understood the proceedings. For example, at the beginning of the hearing, the district court told Ledezma, "If I would ask you a question that you don't understand, I want you to tell your lawyer and the interpreter that you don't understand the question so I can restate or rephrase the question." The district court then asked, "Do you understand this?" Ledezma answered, "Yes." At one point, the district court became concerned that the interpreter was being interrupted. The district court stopped the proceedings and asked the interpreter if she had been interrupted, to which she answered, "No."

At the conclusion of the change-of-plea hearing, the Government alerted the district court to the fact that "Ledezma [had] decided today not to talk to the Government" as required by the March plea agreement. The district court took the opportunity to explain to Ledezma the consequences of cooperating or not cooperating with the Government. This included a brief description of how a downward departure for substantial assistance worked and what his sentence might be if he did not receive a downward departure. The district court ended its discussion by asking Ledezma if he understood that, without a motion for a downward departure for substantial assistance, he could face a mandatory sentence of 20 years' imprisonment. Ledezma answered that he understood the situation.

Shortly after executing the March plea agreement, Ledezma began to regret his decision. On March 26, 2001, Ledezma sent Nuñez a letter in which he wrote, "I was lead to believe [sic] that my plea was a [sic] open plea. Now that I have had time to go over what I signed on 3-22-01 . . . I wish to withdraw my plea and change my plea to not guilty." Ledezma sent a similar letter to the district court on April 17, 2001. Because of Ledezma's allegations that she intentionally misled him in order to induce a guilty plea, Ledezma's attorney filed a motion to withdraw, which was granted on May 1, 2001. Ledezma was subsequently appointed a new attorney.

Per Ledezma's stated intentions, his new attorney, James Bryson Clements, filed a Motion to Withdraw Guilty Pleas on May 31, 2001. According to Ledezma's motion, his plea of guilty was coerced by the Government's apparent threat to charge his wife in the drug conspiracy. Two days later, Ledezma once again had a change of heart and asked the district court to withdraw the motion to withdraw his guilty pleas. The district court immediately granted Ledezma's motion to withdraw the motion to withdraw his guilty pleas.

By this point, the Government was becoming increasingly frustrated by Ledezma's refusal to cooperate with law enforcement. For example, through counsel,

Ledezma informed the Government that "he would be interested in assisting the government only in exchange for no incarceration, deportation to Mexico, and allowing him to re-enter the United States legally to return to his family." Ledezma's continual refusal to abide by the March plea agreement eventually caused the Government to file a Motion to Revoke or Set Aside Plea Agreement ("motion to revoke").

On July 27, 2001, the district court held a hearing on the Government's motion to revoke. The Government argued that Ledezma's refusal to cooperate with law enforcement or to stipulate to career offender status represented material breaches of the March plea agreement. Ledezma, however, asserted that he never agreed to cooperate with law enforcement and was not informed of this obligation. Instead, Ledezma stated that he first became aware of his obligation to cooperate with law enforcement after the change-of-plea hearing, when a jailhouse friend read to him the March plea agreement. Although this was in obvious contradiction to the discussion at the end of the change-of-plea hearing, the district court gave Ledezma the benefit of the doubt and accepted his assertions. The district court granted the Government's motion to revoke the March plea agreement and set aside Ledezma's guilty pleas and associated stipulations. The net result of the district court's action was to return the parties to their original positions prior to the plea agreements.

Ledezma was now becoming increasingly frustrated with Clements, his new attorney. In a letter to the district court, Ledezma again alleged that his attorney failed to explain fully the now-revoked plea agreement and that Clements did not provide a translator during their meetings. Clements explained in a separate letter to the district court that he and Ledezma had met several times to discuss the plea agreement and on each occasion Ledezma had spoken English fluently. At a September 7, 2001 hearing on his request for a new attorney, Ledezma only complained about the drug quantity to which he had stipulated. The district court made clear to Ledezma that, as a result of the Government's motion to revoke, his

plea and stipulations were set aside and he was once again presumed innocent. The district court then denied Ledezma's request for a new attorney.

On September 12, 2001, a fourth superceding indictment was brought against Ledezma. This new indictment added a drug quantity of more than 500 grams of cocaine to the count of possessing with the intent to distribute cocaine and added a count for use of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

Approximately one month later, Ledezma filed a Motion to Reinstate Plea Agreements ("motion to reinstate"). In the motion, Ledezma once again stated that, contrary to the March plea agreement, "he never agreed to cooperate with the Government." He also asserted that he had agreed to stipulate to 500 grams of cocaine, not to an amount of "at least 500 grams of powder cocaine" as contained in the March plea agreement. Finally, he asserted that "he did not agree he was a career offender." Nevertheless, Ledezma sought to bind the Government to its obligations under the now-revoked March plea agreement.

A hearing before a magistrate judge was held on October 22, 2001. Ledezma argued that he had never agreed to withdraw his plea of guilty and that the Government did not have the authority to withdraw unilaterally from the plea agreement. Further, Ledezma continued to insist that he should not be bound by his obligations under the March plea agreement. Not only did Ledezma continue to refuse to make the stipulations required by the March plea agreement, but, according to his attorney, "he also indicate[d] that he never agreed to cooperate with the government even though the plea agreement contains a provision for cooperation." While the March plea agreement was no longer enforceable, the Government indicated that it was "still open to negotiations."

The magistrate judge recommended that the district court deny Ledezma's motion to reinstate. According to the magistrate judge's report and recommendation, Ledezma continued to "challenge[] the very core issues contained in the proposed plea agreements: cooperation; admission to being a career offender; and limitation of the amounts of drugs involved." This meant that "there was no meeting of the minds which would give rise to a mutual agreement between the government and defendant, sufficient to require enforcement of the plea agreements." The district court accepted the report and recommendation and denied Ledezma's motion to reinstate.

Prior to trial, the district court granted the Government's motion to dismiss without prejudice the non-drug counts. The case then proceeded to trial on the four drug-related counts in the fourth superceding indictment. A jury returned a verdict of guilty on all four counts and the district court sentenced Ledezma to life imprisonment plus 60 months. We affirmed Ledezma's conviction. *United States v. Juan Ledezma-Rodriguez*, No. 02-1671 (8th Cir. Sept. 9, 2002) (unpublished per curiam).

Ledezma subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The bases for his motion were twofold: first, both of his attorneys provided ineffective assistance by failing to advise him of his obligations under the March plea agreement; and second, Clements provided ineffective assistance by attempting to withdraw his guilty pleas without his consent and by failing to enforce the March plea agreement in accordance with his understanding. In his reply to the Government's response, Ledezma added a third basis for granting his § 2255 motion: both of his attorneys provided ineffective assistance by failing to communicate to the Government his willingness to cooperate.

First, the district court concluded that Ledezma's alleged failure to understand fully the March plea agreement was not prejudicial because the plea agreement, his guilty pleas and the associated stipulations had been set aside. Second, the district

court concluded that Ledezma's continual refusal to abide by the terms of the March plea agreement led to the Government's decision to revoke the plea agreement. "Further, [Ledezma's] counsel did file a motion to enforce the plea agreement prior to trial." An evidentiary hearing was not necessary because the record clearly demonstrated that Ledezma was not entitled to relief.

As to the third claim of ineffective assistance of counsel, the district court initially did not address Ledezma's late-raised argument that his attorneys frustrated his desire to cooperate with law enforcement. However, in an order denying Ledezma's motion to reconsider, the district court found such claims not credible. Ledezma never availed himself of the opportunities to indicate to the district court or the Government that his attorneys were frustrating his desire to cooperate with law enforcement. Quite to the contrary, Ledezma's actions and statements indicated that he, in fact, did not want to cooperate with law enforcement. Further, the district court found that "any alleged ineffectiveness of counsel was only part of the breakdown of the plea rather than the sole reason." As such, even if Ledezma's attorneys had been unreasonably deficient, he could not establish any prejudice as a result of their ineffectiveness.

The district court granted Ledezma a certificate of appealability on July 2, 2004. Ledezma challenges on appeal the district court's refusal to hold an evidentiary hearing. He argues that, if his allegations are taken as true, his attorneys' ineffectiveness was prejudicial because it denied him an acceptance-of-responsibility reduction and the benefit of cooperation with law enforcement.

## II.   DISCUSSION

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. We review the district court's decision not to hold

an evidentiary hearing for an abuse of discretion. *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Id.* Therefore, in order to determine if Ledezma is entitled to remand for an evidentiary hearing, we must consider the validity of his ineffective-assistance-of-counsel claim. *Id.*

"The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). More specifically, the petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). Therefore, Ledezma must present some credible, non-conclusory evidence that he would have ended up with the benefits of the March plea agreement had his counsel: (1) not filed the motion to withdraw the guilty plea; (2) explained fully the terms of the plea agreement; and (3) expressed to the Government that he was willing to cooperate and facilitated such cooperation.

We begin by addressing Ledezma's claim that both of his attorneys provided ineffective assistance of counsel by failing to explain fully the terms of the March plea agreement. As an initial matter, we note that there is evidence in the record that both of Ledezma's attorneys went over the terms of the plea agreement with him. Ledezma stated both in writing and in open court that Nuñez had reviewed with him and explained the plea agreement. *See Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73 (1977), for the proposition that "the defendant's representations during the plea-taking carry a strong

presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings'"). Clements stated in a letter to the district court that he had spent several hours going over the plea agreement with Ledezma. Further, prior to the Government's motion to revoke, Ledezma displayed knowledge of the particular provisions of the plea agreement, which he claimed were not explained to him.

Even assuming that both of his attorneys failed to explain the terms of the plea agreement, we agree with the district court that no prejudice resulted. Upon the Government's motion to revoke, the March plea agreement was withdrawn. The district court also set aside Ledezma's guilty pleas and associated stipulations. Any objection Ledezma might have had to the March plea agreement, therefore, was nullified. Because Ledezma is unable to demonstrate ineffectiveness of counsel or prejudice, we conclude that the district court properly denied an evidentiary hearing on Ledezma's claim that his attorneys failed to explain fully the terms of the March plea agreement.

Ledezma also argues on appeal that his attorney provided ineffective assistance by moving to withdraw his guilty pleas against his wishes. The motion to withdraw guilty pleas was perfectly consistent with Ledezma's statement to his first attorney that "now that I have had time to go over [the March plea agreement,] I wish to withdraw my plea and change my plea to not guilty." Also, any alleged prejudice suffered as a result of Ledezma's change of heart was eliminated by his subsequent motion to withdraw the motion to withdraw guilty pleas.

In order to connect his attorney's performance with the revocation of the March plea agreement, Ledezma argues that the apparently unintentional motion to withdraw guilty pleas caused the Government to file the motion to revoke the March plea agreement. A review of the record demonstrates otherwise. The motion to revoke cited Ledezma's refusal both to stipulate to career offender status and to cooperate fully with law enforcement as the reasons for revoking the March plea agreement.

*See United States v. Brown*, 801 F.2d 352, 354 (8th Cir. 1986) (holding that the Government is no longer bound by its obligations under a plea agreement when a defendant commits a material breach). Further, Ledezma's repeated statements that he never agreed to certain obligations under the plea agreement were sufficient evidence for the district court to find that there was not a meeting of the minds. *See United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996) ("When the government proposes a plea agreement, when the defendant accepts it and when the district court enforces it, there must be a meeting of minds on all of its essential terms."). Finally, at the hearing, the Government stated, "Mr. Ledezma is incorrect in indicating that Mr. Clements withdrew his plea agreement. The Government moved to revoke the plea agreement because of objections filed by the defendant." Given Ledezma's continual objections to the terms of the March plea agreement, the district court appropriately granted the Government's motion to revoke. Accordingly, Ledezma was not entitled to an evidentiary hearing on this claim.

Along the line of his attorneys' alleged failure to explain the terms of the plea agreement, Ledezma also asserts that his attorneys frustrated his desire to cooperate with law enforcement. In fact, the record shows that Ledezma made it abundantly clear to his attorneys, the Government and the district court that he never intended to comply with certain essential provisions of the plea agreement, including the cooperation provision. Ledezma's unwillingness to cooperate was noted as early as the March 22, 2001 change-of-plea hearing, when the Government stated, "[S]o far, we have not received any cooperation, and there would not be a departure motion available." While Ledezma complains that this exchange was not translated for him, the hearing ended with the district court asking him directly if he understood the ramification of his failure to meet his obligation to cooperate under the plea agreement. Given Ledezma's answer to the district court's question, we conclude that at least this portion of the discussion was translated.

In reality, Ledezma was not only aware of the Government's interest in his cooperation, but he also sought to abrogate or renegotiate the cooperation provision of the March plea agreement. Regardless, certainly by the October 22, 2001 hearing on Ledezma's motion to reinstate the March plea agreement, Ledezma was aware of both the Government's interest in his cooperation and its willingness to enter into negotiations for a new plea agreement. After a careful review of the record, therefore, we find that Ledezma's allegation that he would have cooperated with law enforcement but for his attorneys' ineffective assistance is simply incredible. As such, the district court properly held that Ledezma's allegation of ineffective assistance of counsel did not warrant an evidentiary hearing.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Ledezma's § 2255 motion without holding an evidentiary hearing.

_____