**UNITED STATES of America,
Plaintiff,**

v.

**Alfredo LUNA, Defendant.**

**No. CR 00–4022–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Oct. 3, 2006.

Jamie D. Bowers, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

ORDER REGARDING DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ....................................889

II. LEGAL ANALYSIS .........................................................890
 A. Standards For Relief Pursuant To § 2255 ...........................890
 B. Retroactivity Of Booker Decision ..................................891
 C. Ineffective Assistance Of Counsel .................................892
 1. Applicable standards ..........................................893
 2. Claims of ineffective assistance at issue here ..................894
 a. Failure to fully impeach witnesses .........................894
 i. Scott Windles .......................................894
 ii. John DeHaan ........................................896
 iii. Matt Miller ........................................896
 b. Use of 2000 edition of federal guidelines ...................897
 c. Calculation of criminal history ............................898
 d. Weapons enhancement ......................................898
 D. Certificate Of Appealability .......................................899

III. CONCLUSION ............................................................899

## I. INTRODUCTION AND BACKGROUND

In a two-count indictment returned on February 4, 2000, defendant Alfredo Luna was charged with conspiracy to distribute methamphetamine and cocaine (Count 1), in violation of 21 U.S.C. § 846, and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). At trial, among other evidence, the government presented the testimony of several co-conspirators, who testified pursuant to plea agreements. Specifically, Matt Miller testified that he had received twenty pounds of methamphetamine and three or four pounds of cocaine from Luna. Miller also testified that Luna had an AR 15 rifle, which he threatened to use if Miller ever informed on Luna. Miller further related that during several drug transactions Luna had pointed a 9mm pistol with a laser sight at him. Scott Windles testified that Luna had supplied him with five to eight pounds of methamphetamine. Moreover, Windles testified that he saw an AR 15 rifle at Luna's home and that Luna had pointed a 9mm pistol at him during drug transactions. Luna presented several witnesses and testified in his defense. Following a three-day trial, the jury convicted Luna of the conspiracy charge, but acquitted him of the weapons charge. At Luna's sentencing, the court found that, based on the trial testimony, Luna was responsible for more than 10,000 but less than 30,000 kilograms of marijuana equivalent, resulting in a base offense level of 36. The court also imposed a two-level enhancement for possessing a dangerous weapon under U.S.S.G. § 2D1.1(b). Based on a total offense level of 38 and criminal history category of II, the court found that Luna's sentencing range was 262 to 327 months. The court sentenced Luna to 262 months imprisonment.

Defendant Luna appealed his conviction, raising the following issues in his appeal:

that the court abused its discretion in denying his Rule 33 motion for a new trial, asserting that the government's witnesses lacked credibility; that the court erred in finding that he was accountable for more than 10,000 kilograms of marijuana equivalent, and that the court erred in imposing a two-level weapons enhancement pursuant to U.S.S.G. § 2D 1.1(b). The Eighth Circuit Court of Appeals denied defendant Luna's appeal. *See United States v. Luna,* 265 F.3d 649 (8th Cir.2001). Defendant Luna subsequently filed his current § 2255 motion.

In his § 2255 motion, defendant Luna challenges the validity of his conviction and sentence on the ground of ineffective assistance of trial and appellate counsel for the following reasons: (1) that his trial counsel was ineffective because he failed to fully impeach government witnesses; (2) that his trial counsel was ineffective in failing to object to the edition of the federal guidelines used at the time of sentencing; (3) that his trial counsel was ineffective in failing to object to the criminal history for Luna that was set out in his presentence investigation report; (4) that his trial counsel was ineffective in failing to object to the standard utilized by the court in determining the applicability of a two-level weapons enhancement pursuant to U.S.S.G. § 2D1.1(b); (5) that his appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness in failing to fully impeach government witnesses; (6) that appellate counsel was ineffective in failing to raise the issue of the edition of the federal guidelines used at the time of sentencing; and, (7) that his appellate counsel was ineffective in failing to raise on appeal the issue of the court's calculation of defendant Luna's criminal history. Defendant Luna subsequently amended his § 2255 motion in order to challenge his sentence in light of the United States Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), arguing that the *Booker* decision must be given retroactive effect.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

■ The court must first consider the standards applicable to a motion for relief from sentence pursuant to 28 U.S.C. § 2255. Section 2255 of Title 28 of the United States Code provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States,* 339 F.3d 777, 781 (8th Cir.2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (quoting *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)); *accord Auman v. United States,* 67 F.3d 157, 161 (8th Cir.1995) (quoting *Wilson*). On the other hand,

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *Unit-*

ed States v. Frady, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir.1988) *(per curiam)*. *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir.1993) *(per curiam); accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir.2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir.2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir.2001) (quoting *Bousley*, 523 U.S. at 622, 118 S.Ct. 1604, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). "Actual prejudice" requires a showing that the alleged error " 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a pro-

cedurally defaulted claim, " 'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604). " 'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749–50 (8th Cir.2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir.2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir.2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir.2006) (" 'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir.2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir.2005)).

## B. Retroactivity Of Booker Decision

The court will turn first to address Luna's claim for § 2255 relief based on the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), arguing that there is a reasonable probability that, but for the court's erroneous belief that the Sentencing Guidelines were mandatory, the court would have imposed a lesser sentence. Luna concedes that he did not raise this issue on direct appeal, but con-

tends that *Booker* must be given retroactive application.

■ On January 12, 2005, the United States Supreme Court handed down its decision in *Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker*, the Court issued two separate majority opinions. *Id.* First, Justice Stevens, writing for the Court, held that the rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 applied to the federal sentencing guidelines. *Booker*, 125 S.Ct. at 745. Justice Stevens's opinion was grounded on the premise that the federal sentencing guidelines were mandatory and imposed binding requirements on all sentencing judges. *Id.* at 749. The second majority decision, with Justice Breyer writing for the Court, invalidated two provisions of the Sentencing Reform Act of 1984 that had the effect of making the Guidelines mandatory. *Id.* at 756. However, by its very terms, *Booker* states that it is to apply "to all cases on direct review." *Id.* at 769. The decision makes no reference to cases on collateral review. Every federal court of appeals, including the Eighth Circuit Court of Appeals, to have considered the issue has held that *Booker* does not apply retroactively to cases on collateral review. *See Never Misses A Shot v. United States*, 413 F.3d at 781, 783 (8th Cir.2005); *see also Lloyd v. United States*, 407 F.3d 608, 615–16 (3rd Cir.2005); *Guzman v. United States*, 404 F.3d 139, 143–44 (2d Cir.2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir.2005); *United States v. Price*, 400 F.3d 844, 845 (10th Cir.2005); *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir.2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.2005). Because this case was not pending on direct review when *Booker* was decided, the holdings of *Booker* would be inapplicable as a basis to attack the sentence here. *See*

*Never Misses A Shot*, 413 F.3d at 783; *see also Lloyd*, 407 F.3d at 615–16; *Guzman*, 404 F.3d at 143–44; *Varela*, 400 F.3d at 868; *Price*, 400 F.3d at 845; *Humphress*, 398 F.3d at 857; *McReynolds*, 397 F.3d at 481. Therefore, this part of defendant Luna's motion is **denied.**

### C. Ineffective Assistance Of Counsel

■ The remainder of Luna's claims for § 2255 relief are based on the alleged ineffective assistance of his trial and appellate counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir.2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir.2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Luna is entitled to relief on his § 2255 motion turns on whether or not he can

satisfy the standards applicable to his "ineffective assistance" claims.

### 1. Applicable standards

██ As the Eighth Circuit Court of Appeals has explained, " 'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.' " *United States v. Ledezma–Rodriguez,* 423 F.3d 830, 836 (8th Cir.2005) (quoting *Saunders v. United States,* 236 F.3d 950, 952 (8th Cir.2001), in turn citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *Davis v. Norris,* 423 F.3d 868, 877 (8th Cir.2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

██ The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *United States v. Rice,* 449 F.3d 887, 897 (8th Cir.2006) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). That showing can be made by demonstrating that counsel's performance " 7Ffell below an objective standard of reasonableness.' " *Wiggins v. Smith,* 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). There are two substantial impediments to making such a showing, however. First, " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *Rice,* 449 F.3d at 897 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *Davis,* 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker,* 324 F.3d 1032, 1040 (8th Cir.2003).

██ Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma–Rodriguez,* 423 F.3d at 836; *Davis,* 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show " 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different ... [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.' " *Rice,* 449 F.3d at 897 (again quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052); *Davis,* 423 F.3d at 877) (same). Thus, " '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Pfau v. Ault,* 409 F.3d 933, 939 (8th Cir.2005) (quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not ... need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro,* 179

F.3d 616, 620 (8th Cir.1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir.1997).

Luna contends that his trial and appellate counsel were ineffective in the following ways: (1) that his trial counsel was ineffective because he failed to fully impeach government witnesses; (2) that his trial counsel was ineffective in failing to object to the edition of the federal guidelines used at the time of sentencing; (3) that his trial counsel was ineffective in failing to object to the criminal history for Luna that was set out in his presentence investigation report; (4) that his trial counsel was ineffective in failing to object to the standard utilized by the court in determining the applicability of a two-level weapons enhancement pursuant to U.S.S.G. § 2D1.1(b); (5) that his appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness in failing to fully impeach government witnesses; (6) that appellate counsel was ineffective in failing to raise the issue of the edition of the federal guidelines used at the time of sentencing; and, (7) that his appellate counsel was ineffective in failing to raise on appeal the issue of the court's calculation of defendant Luna's criminal history. The court will consider in turn the allegations of ineffectiveness of Luna's counsel.[1]

### 2. *Claims of ineffective assistance at issue here*

#### a. *Failure to fully impeach witnesses*

Defendant Luna asserts that his trial counsel was ineffective in failing to fully impeach government witnesses at the time of trial. Specifically, defendant Luna asserts that his trial counsel failed to impeach government witness Scott Windles regarding his desire to have his own sentence reduced for his cooperation. Luna also contends that Windles should have been impeached regarding his being employed by Luna's ex-wife. Luna next asserts that his counsel failed to impeach government witness John DeHaan regarding the fact that his legal counsel previously represented Luna's ex-wife in their divorce proceedings. Luna further asserts that his counsel failed to impeach Matt Miller on the basis that he violated the terms of his probation by cheating on his drug tests.

#### i. *Scott Windles.*
As noted above, defendant Luna asserts that his trial counsel was ineffective because he failed to impeach Scott Windles regarding Windles's desire to have his own sentence reduced for his cooperation. Luna further contends that Windles should have been impeached regarding his formerly being employed by Luna's ex-wife. With respect to Windles's desire to have his sentence reduced, that subject was addressed during his direct examination by the government:

Q. What I'd like you to do is tell this jury what's in it for you if you testify here today.

A. Possibly a reduced sentence.

Q. And you've already been sentenced by the court; correct?

A. Yes, that's correct.

Q. Tell this jury how much prison time you're to serve right now.

A. Forty-two months.

Q. And how is it that you could have your sentenced reduced as far as your understanding goes?

A. For cooperation.

---

1. The court notes that defendant Luna was represented by the same counsel during his trial and during his appeal.

Q. What does cooperation mean? What's that phrase mean for those who might not know yet?

A. Helping the government any way I can.

Q. So lying and cheating and stealing; right?

A. No.

Q. Well, explain it. Are there boundaries to what you can do?

A. Yes. Just do everything within the law, make buys, I've worn a wire and set up appointments, talked on the phone to set up buys.

Q. Of those things you have mentioned, making buys, making phone calls—testifying, did you say that?

A. Yes, and testifying.

Q. What things have you done to help the government in your particular situation?

A. All of them.

Q. Now, originally you were facing a prison term of how long?

A. I believe a 10–year minimum up to 210 months.

Q. And because of your cooperation, your sentence has been reduced.

A. Yes, that's correct.

Trial Tr. at 4–5. Although the government stole some of the fire of Windles's cooperation as a topic for cross-examination by bringing the issue up first during Windles's direct examination, Luna's counsel did bring up on cross-examination the topic of Windles's desire for a further reduction in his sentence through his testifying against Luna:

Q. Now, when you went to jail when they arrested you,

A. No. put you in jail, you didn't like jail, did you?

Q. You don't like being in jail.

A. I don't think anybody does.

Q. Looking at 17 years.

A. Yes.

Q. That's a long, long time.

A. (Witness nodded head.)

Q. And you're a young man, but 17 years is a long time.

A. Yes.

Q. And so the only way that you can get a reduced sentence is by giving information which is helpful to the government.

A. Yes.

Q. And the information that you give them has to be something that's not just cumulative, not something that they already know. You have to come up with something new, do something extra for them; is that right?

A. I guess.

Q. Isn't that what your agreement says?

A. Yes.

Q. Okay. And you've got that 17 years down to about 3 and a half now, 42 months.

A. Yes.

Q. And you have a chance—you're told by coming in and testifying that you can get still more knocked off if they file a Rule 35 motion; is that right?

A. Yes.

Trial Tr. at 84–85.

Because the record shows that the topic of Windles's desire to obtain a reduced sentence through his cooperation with the government was fully brought to the jury's attention on both direct and cross-examination, the court concludes that defendant Luna has not demonstrated that

he was prejudiced by his counsel's cross-examination of Windles on this issue. Therefore, this part of defendant Luna's motion is denied.

 Luna also contends that his trial counsel was ineffective because he failed to impeach Scott Windles regarding his being formerly employed by Luna's ex-wife. This subject was not brought up during Windles's testimony. Luna, however, has failed to indicate in his moving papers what would have been gained from an exploration of this topic during cross-examination. Thus, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his counsel's failure to cross-examine Windles on this subject at trial. Therefore, this part of defendant Luna's motion is also denied.

 *ii. John DeHaan.* Defendant Luna asserts that his trial counsel was ineffective because he failed to impeach government witness John DeHaan regarding the fact that DeHaan's legal counsel previously represented Luna's ex-wife in their divorce proceedings. Although Luna alludes to DeHaan having an "ulterior agenda" for testifying against Luna as a result of DeHaan's legal counsel's former representation of Luna's ex-wife during their divorce proceedings, Luna does not explain in his moving papers what De-Haan's "ulterior" motive was. The court notes that DeHaan was asked, on direct examination, regarding his motive for testifying against Luna. DeHaan testified that he was testifying in hopes of obtaining a reduction in his own sentence based on his cooperation. Trial Tr. at 179–181. Luna's counsel cross-examined DeHaan at length regarding his cooperation and the reduc-

tion in sentence he was hoping to obtain as a result. Trial Tr. at 214–216, 218–220. Given that defense counsel painted a clear picture of DeHaan's motive to fabricate testimony against Luna, and Luna has failed to explain how DeHaan would have had an "ulterior" motive to testify against him based on DeHaan's counsel's former representation of Luna's ex-wife during their divorce proceedings, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his counsel's failure to cross-examine DeHaan about this topic at trial. Therefore, this part of defendant Luna's motion is also denied.

 *iii. Matt Miller.* Defendant Luna also contends that his trial counsel was ineffective because he failed to cross-examine Matt Miller regarding his violation of the terms of his probation by cheating on his drug tests. The court notes that Miller was questioned regarding his drug use. Trial Tr. at 96–99. Moreover, Miller's cheating on drug tests while on pretrial release would be proper fodder for cross-examination. The problem here is that Luna has not indicated what, if any, evidence he has to support his allegation that Miller was cheating on his pretrial release drug tests. Absent such a showing, the court cannot ascertain the possible viability of an attempt to cross-examine Miller on this basis. Thus, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his counsel's failure to cross-examine Miller about this subject at trial. Therefore, this part of defendant Luna's motion is also denied.[2]

---

2. The court notes that defendant Luna has also asserted that his appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness in failing to fully impeach government witnesses. For the rea-

sons discussed above, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his appellate counsel's actions in this regard.

### b. Use of 2000 edition of federal guidelines

Defendant Luna next asserts that his trial counsel was ineffective in failing to object to the edition of the federal guidelines used at the time of sentencing. The 2000 edition of the Federal Sentencing Guidelines was used in preparing defendant Luna's presentence investigation report. PSIR at ¶ 26. Defendant Luna asserts that a 1998 edition should have been used and his counsel was ineffective in failing to object to the use of the 2000 edition.

The court notes that defendant Luna's counsel did submit an objection to the United States Probation Office, asserting that the 1998 edition of the Federal Sentencing Guidelines should have been used in preparing Luna's presentence report. The United States Probation Office noted Luna's objection but did not change the presentence report because the 2000 edition did not present ex post facto issues since the guidelines had not increased the penalties methamphetamine mixtures. Moreover, since evidence at trial indicated that defendant Luna was dealing drugs in the fall of 1999, the 1998 edition should not be used in preparing Luna's presentence investigation report. Defendant Luna's counsel did not renew Luna's objection to the use of the 2000 edition of the Federal Sentencing Guidelines at the time of Luna's sentencing.

A district court generally applies the version of the Sentencing Guidelines in effect on the date of a defendant's sentencing. U.S.S.G. § 1B1.11. However, the Ex Post Facto Clause of the U.S. Constitution requires the defendant to be sentenced under the guidelines in effect at the time of the offense if the guidelines have undergone substantive changes that would disadvantage the defendant. *See United States v. Gardiner*, 463 F.3d 445,

2006 WL 2597365, *12 (6th Cir. Sept. 12, 2006), *United States v. Davis*, 397 F.3d 340, 344 (6th Cir.2005), *United States v. Alfaro*, 336 F.3d 876, 881 (9th Cir.2003). The Eighth Circuit Court of Appeals has held an ex post facto violation occurs "if the defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed." *United States v. Bell*, 991 F.2d 1445, 1452 (8th Cir. 1993); *see Davis*, 397 F.3d at 347 ("The Ex Post Facto Clause is implicated where a law punishes retrospectively; a law is retrospective if it changes the legal consequences of acts completed before its effective date.") (citations and quotations omitted).

Here, the court concludes that application of the 2000 Sentencing Guidelines was proper under U.S. Sentencing Guidelines Manual § 1B1.11 and does not implicate the Ex Post Facto Clause of the U.S. Constitution because the 2000 sentencing provision at issue, the Drug Quantity Table under U.S.S.G. § 2D1.1(a)(3)(c)(2), is identical to the 1998 sentencing provision with respect to methamphetamine mixtures. The court found that, based on the trial testimony, Luna was responsible for more than 10,000 but less than 30,000 kilograms of marijuana equivalent. Both the 2000 Guidelines and the 1998 Guidelines set the offense level for more than 10,000 but less than 30,000 kilograms of marijuana equivalent at a base offense level of 36. Thus, because the punishment under the 2000 and 1998 Sentencing Guidelines remained the same and the Ex Post Facto Clause was not violated, Luna's counsel cannot be faulted for not seeking to have Luna sentenced based on the 1998 Sentencing Guidelines.

Therefore, this part of defendant Luna's motion is also denied.[3]

### c. Calculation of criminal history

Defendant Luna also contends that his trial counsel was ineffective in failing to object to the calculation of his criminal history. Specifically, Luna asserts that his trial counsel was ineffective in failing to seek a downward departure on the grounds that his criminal history category over-represented the seriousness of his criminal history.

Under U.S.S.G. § 4A1.3, a departure is warranted in "cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. In such a case, "[t]he court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ... and therefore consider a downward departure from the guidelines." *Id.*

▄▄▄▄ Defendant Luna was found by the court to have three criminal history points and therefore he was found to be in criminal history category II. Luna argues that the seriousness of his criminal history was overstated because he only had one prior conviction, a 1998 conviction for possession of a stolen firearm. However, he was assessed two additional criminal histo-

ry points, pursuant to U.S.S.G. § 4A.1.1(d), because he was on probation for that offense at the time that a portion of the criminal offenses charged in this case occurred. The Guidelines expressly sanction the addition of two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). The court concludes that if Luna's counsel had sought a downward departure on the grounds that his assessed criminal history category overstated the seriousness of his criminal history it would have been denied because defendant Luna's criminal history is not manifestly less serious than that of defendants typically labeled category II. Indeed, were the court to accept Luna's argument on this point, it would have as its effect the total disregard of U.S.S.G. §§ 4A1.1(d). Thus, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his counsel's failure to seek a downward departure on the grounds that his assessed criminal history category overstated the seriousness of his criminal history. Therefore, this part of defendant Luna's motion is also denied.[4]

### d. Weapons enhancement

Defendant Luna further contends that his trial counsel was ineffective in failing to object to the standard utilized by the court

---

**3.** The court notes that defendant Luna has also asserted that his appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness in failing to object to the court's use of the 2000 Sentencing Guidelines for determining Luna's sentence. For the reasons discussed above, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his appellate counsel's actions in this regard.

**4.** The court notes that defendant Luna has also asserted that his appellate counsel was ineffective in failing to raise the issue of trial counsel's failure to seek a downward departure on the grounds that his assessed criminal history category overstated the seriousness of his criminal history. For the reasons discussed above, the court concludes that defendant Luna has not demonstrated that he was prejudiced by his appellate counsel's actions in this regard.

in determining the applicability of a two-level weapons enhancement pursuant to U.S.S.G. § 2D1.1(b). Luna contends that the two level gun enhancement was unwarranted in his case given that he had been acquitted of the 924(c) weapons charge and his trial counsel was ineffective for not challenging the court's application of § 2D 1.1(b)'s two-level weapons enhancement to him.

 Although acquitted of the firearm charge, Luna was eligible for a two-level increase for the drug offenses, unless it was "clearly improbable" that the weapon he possessed was connected to the drug offenses. *See* U.S.S.G. §§ 2D1.1(b)(1) & 2D1.1 cmt. 3; *see also United States v. Wattree*, 431 F.3d 618, 623 (8th Cir.2005); *United States v. Edwards*, 225 F.3d 991, 993 (8th Cir.2000); *United States v. Friend*, 101 F.3d 557, 558–59 (8th Cir. 1996). Here, trial testimony showed that during the course of the conspiracy defendant Luna possessed several firearms, including several pistols and an AR–15 semiautomatic assault rifle. Matt Miller testified that Luna threatened to use his AR–15 rifle if Miller ever "snitched". Miler also testified that Luna had pointed a pistol at him during several drug transactions. Scott Windles similarly testified that he had seen an AR–15 rifle in Luna's home and that Luna had also pointed a pistol at him during drug transactions. Given this record, Luna was clearly eligible for the two-level weapons enhancement found in U.S.S.G. § 2D1.1(b). The court accordingly concludes that Luna's counsel cannot be faulted for not challenging the court's application of § 2D 1.1(b)'s two-level weapons enhancement to Luna. Therefore, this part of defendant Luna's motion is also denied.

#### D. Certificate Of Appealability

 Defendant Luna must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Garrett v. United States,* 211 F.3d 1075, 1076–77 (8th Cir.2000); *Mills v. Norris,* 187 F.3d 881, 882 n. 1 (8th Cir.1999); *Carter v. Hopkins,* 151 F.3d 872, 873–74 (8th Cir.1998); *Ramsey v. Bowersox,* 149 F.3d 749 (8th Cir.1998); *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir.1997), *cert. denied,* 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox,* 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El* that " '[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' " *Miller–El,* 123 S.Ct. at 1040 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). The court determines that Luna's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); Fᴇᴅ. R.Aᴘᴘ. P. 22(b). With respect to Luna's claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

### III. CONCLUSION

Defendant Luna's § 2255 motion is **denied,** and this matter is **dismissed in its entirety.** Moreover, the court determines that the petition does not present questions of substance for appellate review. *See* 28 U.S.C. § 2253(c)(2); Fᴇᴅ. R.Aᴘᴘ. P.

22(b). Accordingly, a certificate of appealability will not issue.

**IT IS SO ORDERED.**