# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3685

_____

Jesus Anjulo-Lopez,                              *
                                                 *
                    Appellant,                    *    Appeal from the United States
                                                 *    District Court for the
             v.                                  *    Western District of Missouri.
                                                 *
United States of America,                        *
                                                 *
                    Appellee.                    *

_____

Submitted:  June 10, 2008
    Filed:  September 8, 2008

_____

Before MELLOY, BEAM and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

   Jesus Anjulo-Lopez appeals from the decision of the district court[1] to dismiss as untimely his 28 U.S.C. § 2255 motion to vacate, set aside or correct his sentence without holding an evidentiary hearing.  We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

## I. BACKGROUND

On July 12, 2005, Anjulo-Lopez pled guilty to charges involving a drug distribution conspiracy and the unlawful possession of firearms. On November 18, 2005, the district court sentenced him to 135 months on the first count and 120 months on the second count, to be served concurrently. No direct appeal was filed.

On March 5, 2007, Anjulo-Lopez filed a pro se section 2255 motion to vacate, set aside or correct his sentence, alleging, among other things, that trial counsel was ineffective for failing to file a direct appeal despite his request for counsel to do so. Specifically, Anjulo-Lopez alleged that: (1) based on a conversation with his attorney, he believed for some time that an appeal had been filed on his behalf and waited to hear from his attorney; (2) after some time passed with no word, another inmate suggested that no appeal had been filed; (3) Anjulo-Lopez then sent a certified letter to his attorney, requesting copies of the record; and (4) his attorney responded by sending a copy of the judgment and commitment order. Anjulo-Lopez thereafter discovered that no appeal had been filed and thus prepared and filed his motion.

The government moved to dismiss the motion as untimely, noting that it was filed more than a year–approximately fifteen months–after Anjulo-Lopez's conviction became final.[2] The government also argued that Anjulo-Lopez had not shown either

---

[2]Because Anjulo-Lopez was sentenced on November 18, 2005, and did not file a direct appeal, his conviction became final on or about December 5, 2005, when the ten-day period for filing a notice of appeal expired. See Never Misses A Shot v. United States, 413 F.3d 781, 782 (8th Cir. 2005) (noting that, where defendant failed to file direct appeal, his conviction became final ten days after the entry of judgment); Fed. R. App. P. 4(b)(1)(A) (setting a 10-day time limit for filing a notice of appeal in a criminal case); Fed. R. App. P. 26(a)(2) (delineating the method for computing the ten-day period and excluding the first day of the period, intermediate Saturdays, Sundays, and legal holidays). See also, e.g., Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam) (concluding that unappealed criminal judgment

extraordinary circumstances or diligent pursuit of his claims, as required to warrant equitable tolling of the limitations period.

In response, Anjulo-Lopez conceded that his motion was untimely but asked the court to apply equitable tolling because, through no fault of his own, he did not discover counsel's failure to file an appeal until after the one-year filing deadline passed. Specifically, Anjulo-Lopez alleged that he was repeatedly transferred to various holding facilities during the first five months after his sentencing hearing, and that he was unable to communicate with anyone about his appeal during that time. He further explained that he did not contact his attorney for a while thereafter because he believed he was supposed to wait to hear from his attorney and that by the time he found someone willing to help him contact his attorney, the one-year filing deadline had already passed. Finally, he argued that extraordinary circumstances, including his lack of knowledge of the English language and inadequate access to the prison library, prevented him from filing a timely motion and warranted equitable tolling.

The government filed a reply to Anjulo-Lopez's response, and again urged the district court to dismiss the motion as time-barred. The government first noted that Anjulo-Lopez had conceded his motion was untimely and then reiterated its position that he could not benefit from equitable tolling because he did not diligently pursue his appeal. More specifically, the government pointed to Anjulo-Lopez's admission, in his response to the government's motion to dismiss, that his first attempt to contact his attorney regarding his appeal came after the one-year filing deadline had passed–more than a year after his conviction became final. In response, Anjulo-Lopez filed a supplemental reply, asking the court to hold an evidentiary hearing on the applicability of equitable tolling.

---

becomes final for purposes of calculating the one-year period specified in section 2255 when the ten-day period for filing a notice of appeal expires).

-3-

Without holding an evidentiary hearing, the district court dismissed Anjulo-Lopez's section 2255 motion as time-barred on May 14, 2007. The district court declined to apply equitable tolling because it found Anjulo-Lopez had not shown diligence in pursuing his appeal. The court also denied Anjulo-Lopez's subsequent Rule 59(e) motion to alter or amend the judgment. Anjulo-Lopez then filed a notice of appeal with this court and requested a certificate of appealability from the district court, but the district court declined to grant the certificate.

Although not explicitly considered by the district court, we noted that 28 U.S.C. § 2255(f)(4) allows a prisoner the opportunity to file a section 2255 motion within one year of the date on which the facts supporting the claim or claims presented could have been discovered in the exercise of due diligence. Accordingly, this court granted a certificate of appealability to consider whether the district court erred in failing to hold an evidentiary hearing to determine when the facts supporting Anjulo-Lopez's claim concerning his counsel's failure to file an appeal could have been discovered through the exercise of due diligence. We now affirm.

## II.   DISCUSSION

A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless "'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" United States v. Ledezma-Rodriguez, 423 F.3d 830, 835-36 (8th Cir. 2005) (alteration in original) (quoting 28 U.S.C. § 2255). No hearing is required, however, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotation omitted).

We review the  district court's decision not to hold an evidentiary hearing for an abuse of discretion. Ledezma-Rodriguez, 423 F.3d at 836. That standard is somewhat misleading, however, because review of the determination that no hearing

was required obligates us to look behind that discretionary decision to the court's underlying determination that Anjulo-Lopez's motion is untimely–a determination we review de novo.  See id; E.J.R.E. v. United States, 453 F.3d 1094, 1097 (8th Cir. 2006).  Accordingly, we must examine Anjulo-Lopez's submissions to the district court, and consider the validity of his timeliness argument.  See, e.g., Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001).  If it is apparent from the face of the motion and supporting record that Anjulo-Lopez's petition is untimely, "then no hearing was, or is now, required."  Id.

We therefore turn our attention to the timeliness issue.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposed, among other things, a one-year statute of limitations on motions by prisoners seeking to modify, vacate or correct their federal sentences.  Johnson v. United States, 544 U.S. 295, 299 (2005).  As relevant to this appeal, that year will begin to run from the later of either "the date on which the judgment of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(1), (4).

On appeal, Anjulo-Lopez does not dispute that his section 2255 motion was filed more than a year after his conviction became final.  He argues, however, that the limitations period should run from the date on which a duly diligent person in his circumstances would have discovered counsel's failure to notice an appeal. He asserts that it is unclear from the current record exactly when a duly diligent person would have made that discovery.  He thus contends that an evidentiary hearing is warranted to determine that date and whether his motion was filed within one year of it.

We believe such a hearing is unnecessary.  To be entitled to invoke the statute of limitations contained in section 2255(f)(4), we have said that a petitioner "must show the existence of a new fact, while also demonstrating [that he] acted with diligence to discover the new fact."  E.J.R.E., 453 F.3d at 1097.  The proper task in

-5-

a case such as this one, therefore, "is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Because we think it apparent that a duly diligent person in Anjulo-Lopez's circumstances would have discovered counsel's failure to notice an appeal well over a year before he filed his motion, we conclude that the district court did not abuse its discretion in dismissing the petition as time-barred without an evidentiary hearing.

To be sure, section 2255 "does not require the maximum feasible diligence, only due, or reasonable, diligence." Id. at 190 n.4 (internal quotation omitted). "Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option." Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002). But, it does at least require that a prisoner make *reasonable* efforts to discover the facts supporting his claims. Id.

Here, we think it clear that Anjulo-Lopez did not use reasonable efforts to discover the facts underlying his claim. Between his original petition and his response to the government's motion to dismiss, Anjulo-Lopez merely alleged that (1) he "was not able to communicate with anyone" during the first five months after sentencing, due to repeated transfers; (2) he thereafter believed an appeal had been filed and "all that was required of him[] was [to] wait"; (3) at some point, he began to suspect that no appeal had been filed and "sent a certified/registered letter to [his attorney] requesting copies of the record" (but not, apparently, directly asking whether an appeal had been filed); and (4) "[his attorney] sent a copy of the Judgment and commitment Order;" but (5) by the time he finally attempted to contact his attorney, "[his] filing date for [his] § 2255 motion had already passed."[3]

_____

[3]We realize Anjulo-Lopez now contends that a factual issue exists as to when he first attempted to contact his attorney. As noted above, after the district court granted the government's motion to dismiss, Anjulo-Lopez filed a Rule 59(e) motion to alter or amend the judgment and again asked the court for an evidentiary hearing

These allegations are not indicative of a reasonably diligent quest for information. Indeed, Anjulo-Lopez neither explained why he was "unable to communicate with anyone" about his appeal while in transit, nor described any thwarted attempts to check on the status of his appeal during that period. Instead, Anjulo-Lopez actually admitted he waited an entire year to even *contact* his attorney regarding his appeal. Given that "[the] statute's clear policy calls for promptness," Johnson, 544 U.S. at 311, his efforts fell far short of reasonable diligence.

Moreover, there is every reason to believe that more prompt action on Anjulo-Lopez's part would have revealed counsel's failure to notice an appeal more than one year before he filed his motion. That an appeal had not been filed was a matter of public record. And we think it clear from the face of the motion and record here that

_____

on the issue of equitable tolling. In a supplemental filing, he also submitted an affidavit purporting to describe the diligent steps he had taken to pursue his appeal. Among other things, he claimed to have made numerous telephone calls to his attorney over a period of nearly a year, while in transit, and to have sent his attorney several letters, all with no response.

We note, however, that a Rule 59(e) motion "does not allow arguments or evidence to be presented after judgment when the argument or evidence could have been presented earlier." McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 1003 n.4 (8th Cir. 2003). See also Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (noting, in the context of a motion to dismiss, that a party who fails to introduce facts in a motion or opposition cannot introduce them later in a Rule 59(e) motion unless those facts were previously unavailable). Moreover, the factual allegations in the affidavit are contradicted by Anjulo-Lopez's own assertions in his original motion and his response to the government's motion to dismiss. Accordingly, even if we were to consider the affidavit, we would not find that it renders the motion and supporting record inconclusive on the issue of whether Anjulo-Lopez acted with due diligence. See, e.g., Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992) (concluding that a single self-serving, self-contradicting statement is insufficient to render the motion, files, and records of a case inconclusive, so as to warrant an evidentiary hearing).

a duly diligent person in Anjulo-Lopez's circumstances could have unearthed that information anytime after the deadline for filing the appeal passed. See Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2001). Indeed, as Anjulo-Lopez himself alleged in his original petition, when he finally *did* attempt to contact his attorney via letter (albeit, a letter that did not, apparently, directly ask whether an appeal had been filed), counsel responded by sending copies of the judgment and commitment order.[4]

For the foregoing reasons, we think it plainly apparent that the limitations period set out in section 2255(f)(4) is unavailable to Anjulo-Lopez. See Johnson, 544 U.S. at 311. As such, the district court did not abuse its discretion in dismissing his motion as untimely without an evidentiary hearing.

## III. CONCLUSION

The decision of the district court is affirmed.

_____

_____

[4]We realize that this determination places us at odds with the Second Circuit's ultimate conclusion in Wims v. United States, 225 F.3d at 190-91, the principal authority Anjulo-Lopez relies on in support of his timeliness argument. In Wims, the Second Circuit concluded that it was not unreasonable to think that it would take even a duly diligent person at least five months to discover counsel's failure to notice an appeal. Id. at 191. The court therefore found it was not plainly apparent that Wims' section 2255 motion–filed one year and five months after his conviction became final–was untimely even under section 2255(f)(4). Id.

Although the two cases have some factual similarities, we respectfully believe that the Second Circuit's decision does not control the outcome of this case. For the reasons discussed, we think it clear that a duly diligent person in Anjulo-Lopez's circumstances could have discovered counsel's failure to notice an appeal more than a year before he filed his petition, and that section 2255(f)(4) is therefore unavailable to him.