# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3409
_____

Michael Ingram

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City
_____

Submitted: January 14, 2019
Filed: August 2, 2019
_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

Michael Ingram appeals the district court's[1] denial of his 28 U.S.C. § 2255 motion, which seeks relief from the mandatory minimum sentence imposed for his 2008 conviction for conspiracy to distribute and possess with intent to distribute

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, now retired.

crack cocaine. Ingram's mandatory minimum sentence was doubled from 10 years to 20 years, pursuant to 21 U.S.C. § 851, based on a prior felony drug conviction. The district court granted a certificate of appealability on whether imposition of the § 851 enhancement in Ingram's case violated his Fifth Amendment rights to equal protection and due process ("equal protection/selective prosecution claim"). Ingram bases that claim on the geographical disparity in the application of § 851 enhancements between the Northern District of Iowa and other districts. Because we hold that Ingram's § 2255 motion was untimely, we affirm the district court's denial of habeas relief.

I. *Background*[2]

In October 2007, the government charged Ingram with conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine that contained a cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In February 2008, the government filed a notice that it would seek an enhanced sentence under 21 U.S.C. § 851 based on Ingram's prior felony drug conviction in Illinois. The notice identified Ingram's prior conviction as one for "[m]anufacture/delivery of controlled substance, in Circuit Court of Cook County, Illinois, on or about October 24, 2001, in case number 01CR2195101."

The jury found Ingram guilty of the charged offense. The district court scheduled Ingram's sentencing for June 16, 2008. Before sentencing, the probation officer provided the parties with a presentence investigation report (PSR). The PSR scored Ingram's sentence on the basis of a prior felony conviction, computed Ingram's guideline range to be 168 to 210 months (14 to 17.5 years), but noted

---

[2]Portions of this background section are taken from *United States v. Ingram*, 594 F.3d 972 (8th Cir. 2010), without further attribution.

Ingram's mandatory minimum sentence with the prior conviction enhancement was 240 months (20 years).

At the sentencing hearing, the court denied the government's request for a sentencing enhancement. The court concluded that the government's evidence inconsistently identified the purported statute of conviction. The government put some documents into the record that identified the offense as a violation of 720 Ill. Comp. Stat. 570/401(*D*). But, the government asserted Ingram violated a different statute—720 Ill. Comp. Stat. 570/401(*d*). The court postponed sentencing to allow a government appeal.

On appeal, the government argued the district court erred in determining the government had not proven Ingram's prior penalty-enhancing felony drug conviction. This court remanded on the sentencing enhancement. *United States v. Ingram*, 309 F. App'x 66, 68 (8th Cir. 2009).

On remand, the district court held an evidentiary hearing. Following the hearing, the court found the government had proven beyond a reasonable doubt that Ingram had previously been convicted of a felony drug offense and imposed a sentence of 240 months (20 years). Ingram appealed. On February 10, 2010, this court affirmed Ingram's conviction and sentence. *Ingram*, 594 F.3d at 981.

Thereafter, on June 15, 2010, Ingram filed a petition for writ of certiorari. On October 4, 2010, the Supreme Court denied that petition. *Ingram v. United States*, 562 U.S. 888 (2010).

On August 27, 2014, Ingram filed his § 2255 motion asserting, among other things, his equal protection/selective prosecution claim. The government moved to dismiss the § 2255 motion as untimely. Ingram did not dispute that his § 2255 motion was filed more than one year after the denial of his petition for writ of certiorari. *See*

28 U.S.C. § 2255(f)(1). However, he argued that his § 2255 motion was timely pursuant to a different "triggering" provision, 28 U.S.C. § 2255(f)(4). That section provides that the one-year period runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* Ingram asserted that it was not until the publication of *United States v. Young*, 960 F. Supp. 2d 881 (N.D. Iowa 2013), that he learned of the substantial disparity in the imposition of § 851 enhancements between the Northern District of Iowa and other federal districts. According to Ingram, because he was an incarcerated person, he could not have discovered the information on which *Young* was based. He argued that a reasonable period of time had to elapse between the filing of *Young*, its appearance in the prison library system, and his discovery of *Young*. In summary, he maintained that his § 2255 motion incorporated claims based on new facts concerning the disparity disclosed in *Young* and that those claims were timely filed just over a year after the filing of *Young*.

The district court held that Ingram's claims concerning the constitutionality of § 851 were timely under § 2255(f)(4). First, the district court concluded that Ingram proved the existence of new facts based on *Young*. In that decision, the district court "point[ed] out that the Sentencing Commission's 'first and only, additional targeted coding and analysis project on nationwide application of 21 U.S.C. § 851 recidivist enhancements [was] as part of the Report To The Congress: Mandatory Minimum Penalties In The Federal Criminal Justice System (Commission's 2011 Report).'" *Ingram v. United States*, No. C 14-4071-MWB, 2016 WL 538468, at *7 (N.D. Iowa Feb. 9, 2016) (second alteration in original) (quoting *Young*, 960 F. Supp. 2d at 892). The court noted that the Sentencing "Commission's 2011 Report was not published until about or *after* the one-year statute of limitations for Ingram's § 2255 Motion had run." *Id*. As a result, the court concluded that *Young* set forth

> an analysis of the "new" data about the application of § 851 revealed by
> the Commission's 2011 Report, 960 F. Supp. 2d at 892–902, which, to

-4-

the best of my knowledge and belief, was a publication of "new" facts, or at least "new" factual comparisons that might be specifically relevant to Ingram's case, almost two more years after the Commission's 2011 Report.

*Id.*

Second, the district court determined that Ingram acted diligently to discover the new facts set forth in *Young*. According to the court, "some reasonable period of time had to elapse between the filing of the *Young* decision, its appearance in the prison library system, and [Ingram's] discovery of it." *Id*. The court found that Ingram satisfied the diligence "requirement by filing his § 2255 Motion, asserting claims based on 'new facts' about the disparate application of § 851, only a few days past one year from the publication of *Young*, and less than one year after he was reasonably likely to have actually discovered that decision." *Id*.

The court also rejected the government's argument that Ingram's equal protection/selective prosecution claim was procedurally defaulted for failure to raise the claim on direct appeal. The court held that Ingram had overcome procedural default by establishing cause for the procedural default and actual prejudice. Though the court acknowledged the "anecdotal observation" it made "at Ingram's sentencing that there appeared to be unfair geographic disparities in the application of § 851 enhancements," it concluded that this observation did not provide "an adequate basis for Ingram's claim." *Ingram v. United States*, 296 F. Supp. 3d 1076, 1081 (N.D. Iowa 2017). The court noted that the Sentencing Commission was "the only body that had the pertinent information," and it "did not publish the relevant statistics that could establish an adequate factual basis for such a claim until 2011." *Id*. The court concluded that its publication of the "analysis of the disparity, specifically comparing the Northern District of Iowa to other districts" in *Young*, was when "an adequate basis for Ingram's claim became apparent." *Id*. As a result, the court found that

Ingram demonstrated "cause for his failure to raise on his direct appeal the geographic disparity in application of § 851 enhancements, because the factual basis for such a claim was not reasonably available to him or his counsel before Ingram's appeal." *Id.*

The court next determined that Ingram satisfied the prejudice prong because "[r]emoving improper selective application of the § 851 enhancement in Ingram's case would have resulted in a halving of his mandatory minimum sentence and a significant reduction of his sentence to one within his advisory Sentencing Guidelines range." *Id.*

As to the merits of Ingram's equal protection/selective prosecution claim, the district court held that Ingram failed to establish the lack of a rational basis for any differential treatment of similarly situated persons in the application of § 851 enhancements.

The district court granted a certificate of appealability as to Ingram's equal protection/selective prosecution claim.

## II. *Discussion*

Ingram argues that the district court erred in denying his § 2255 motion. According to Ingram, he proved that application of § 851 enhancements "is applied arbitrarily across the federal districts, resulting in [his] selective prosecution . . . and a violation of his [Fifth] Amendment right to equal protection." Appellant's Br. at 17. In response, in addition to defending the merits of the district court's decision, the government also argues that Ingram's § 2255 motion was time-barred and was procedurally defaulted. We now address the government's timeliness argument.

We review de novo the denial of a § 2255 motion. *Deroo v. United States*, 709 F.3d 1242, 1245 (8th Cir. 2013).

Ingram concedes that his § 2255 motion "was not timely filed within the limitations period of 28 U.S.C. § 2255(f)(1)." Appellant's Br. at 1; *see also* 28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall . . . . run from . . . the date on which the judgment of conviction becomes final . . . ."). Nevertheless, he argues that his § 2255 "motion is not untimely based on 28 U.S.C. § 2255(f)(4)." Reply Br. at 1. Under § 2255(f)(4), the one-year statute of limitations begins to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

"To be entitled to invoke the statute of limitations contained in section 2255(f)(4), we have said that a petitioner must show the existence of a new fact, while also demonstrating that he acted with diligence to discover the new fact." *Deroo*, 709 F.3d at 1245 (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)).

The first question, therefore, is whether Ingram has shown the existence of a new fact. *See id*. For example, the Supreme Court has held that an order vacating a prior state-court conviction, which had been used to enhance the petitioner's federal sentence, constituted a new fact because it was "subject to proof or disproof like any other factual issue." *Johnson v. United States*, 544 U.S. 295, 307 (2005). By contrast, a judicial decision interpreting the law does not constitute a "new fact" for purposes of § 2255(f)(4). *See E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006) (holding intervening change in law is insufficient to reset the statute of limitations period under the Antiterrorism and Effective Death Penalty Act and declining to equitably toll the statute of limitations). A judicial decision, "unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved." *Id*. (citing *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005) ("We would never, for example, ask a jury to decide whether a judicial decision had indeed changed a state's law in the relevant way, nor would the parties introduce evidence on the question.")); *see also Whiteside v. United States*,

775 F.3d 180, 183–84 (4th Cir. 2014) (holding an intervening change of law is not a fact supporting a claim); *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013) (holding an intervening federal court of appeals decision was newly-discovered law, not a newly-discovered fact); *Lo v. Endicott*, 506 F.3d 572, 575–76 (7th Cir. 2007) (holding that while a state court's decision modifying substantive law could arguably help the petitioner's claim, the decision did not constitute a factual predicate for the petitioner's habeas claims).

Here, the "new facts" on which Ingram relies are those set forth in *Young* concerning the disparate application of § 851 among the various federal districts. In *Young*, the district court provided an "[o]verview [o]f [t]he [u]nderlying [d]ata [o]n § 851 [e]nhancements." 960 F. Supp. 2d at 892 (bold and italics omitted). The court based its overview on the Sentencing Commission's 2011 Report, stating:

> The grim state of affairs for § 851 enhancements . . . is starkly revealed by an examination of the Commission's § 851 data on the one occasion that it collected such information. Every year, pursuant to its statutory mandate, the Commission publishes national data collected from federal sentencings spanning all ninety-four districts. In 2011, the Commission conducted the first and only, additional targeted coding and analysis project on nationwide application of 21 U.S.C. § 851 recidivist enhancements as part of the REPORT TO THE CONGRESS: MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM (Commission's 2011 REPORT). Ninety-three of the ninety-four districts reported data, and the Commission described in detail its methodology for its targeted § 851 study. The Commission's 2011 REPORT itself notes, "[This] study of drug offenses and mandatory minimum penalties demonstrates a lack of uniformity in application of the enhanced mandatory minimum penalties." Commission's 2011 REPORT at 253.

*Id*. (alteration in original) (footnotes omitted).

The 2011 Report, however, did "not contain the raw data used for the § 851 analysis"; therefore, the district court "requested it directly from the Commission, and the Commission quickly responded by sending [the district court] the '851 datafile.'" *Id*. at 893. The district court "then re-analyzed and reformatted the raw data in several significant ways that go far beyond the Commission's analysis." *Id*. In particular, the district court "compare[d] the application of § 851 enhancements in the N.D. of Iowa to national statistics and the Eighth Circuit respectively." *Id*. Analyzing the § 851 data file, the court determined that "[t]he N.D. of Iowa ranks fourth in the nation in its use of § 851 enhancements (79% of eligible defendants received a § 851 enhancement)." *Id*. at 894. According to the court:

> Prosecutors in the N.D. of Iowa applied this enhancement at a rate more than six times the national median application rate (13%) and more than three times the national average application rate (26%). Compared to the national median application, eligible offenders in the N.D. of Iowa are 626% more likely to be subject to a § 851 enhancement and, compared to the national application average, eligible offenders are 311% more likely to receive a § 851 enhancement.

*Id*. (footnotes omitted).

The government argues that *Young* is newly-discovered law, not newly-discovered facts. We agree with the district court, however, that "Ingram [is] rel[ying] on] the *facts* presented in *Young* about the disparate application of § 851 among the various federal districts, not the *Young* decision itself." *Ingram*, 2016 WL 538468, at *7 (emphasis added). The facts set forth in *Young* relied on the Commission's 2011 Report, which "was not published until about or *after* the one-year statute of limitations for Ingram's § 2255 Motion had run." *Id*. Therefore, the Commission's 2011 Report on which the court relied in *Young* can constitute "new facts" for purposes of § 2255(f)(4).

But Ingram must also prove "that he acted with diligence to discover the new fact." *Deroo*, 709 F.3d at 1245 (quoting *Anjulo-Lopez*, 541 F.3d at 817). "Due diligence does not require repeated exercises in futility or exhaustion of every imaginable option, but it does require '*reasonable* efforts.'" *Id*. (quoting *Anjulo-Lopez*, 541 F.3d at 818).

Here, the one-year statute of limitations for Ingram to file his § 2255 motion under § 2255(f)(1) expired in October 2011, the same month that the Commission released the 2011 Report.[3] The district court issued its opinion in *Young* setting forth an overview of the Commission's 2011 Report and the raw data underlying that report on August 16, 2013. Ingram filed his § 2255 motion on August 27, 2014, almost three years after the issuance of the Commission's 2011 Report and slightly over one year after the release of *Young*.

We conclude that the issuance of the Commission's 2011 Report—not *Young*—is what triggered Ingram's duty to act with due diligence. As the district court explained, the Commission's 2011 Report revealed facts about "the disparate application of § 851 among the various federal districts." *Ingram*, 2016 WL 538468, at *7. The 2011 Report prompted the district court to request the raw data underlying that report. While the Commission's 2011 Report may not have set forth the raw data underlying its conclusions, it certainly provided notice to Ingram that a disparity existed in the application of § 851. Ingram, however, did not file his § 2255 motion until almost three years after the issuance of the Commission's 2011 Report. Ingram has not explained why he could not have acted sooner to bring his equal protection/selective enforcement claim based on facts revealed in the 2011 Report. Legal challenges to § 851 enhancements based on disparity or disproportionality "are

---

[3] *See* United States Sentencing Comm'n, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (Oct. 2011), *available at* https://www.ussc.gov/research/congressional-reports/2011-report-congress-manda tory-minimum-penalties-federal-criminal-justice-system.

-10-

not novel." *United States v. Collins*, No. 10-CR-322 JNE, 2015 WL 1634764, at *3 (D. Minn. Apr. 13, 2015) (citing *United States v. LaBonte*, 520 U.S. 751, 761–62 (1997) (rejecting argument "that if the Government provides notice under § 851(a)(1) to one defendant, but not to another, the resulting difference in the maximum possible term is an 'unwarranted disparity'"); *United States v. Gordon*, 953 F.2d 1106, 1107 (8th Cir. 1992) (rejecting Eighth Amendment disproportionality argument as meritless in light of Supreme Court's approval of a "life sentence for a first offense of cocaine possession" in *Harmelin v. Michigan*, 501 U.S. 957 (1991), where defendant's career offender "guideline sentence range beg[an] at 262 months")). Therefore, we conclude that Ingram did not exercise due diligence in discovering the facts set forth in the Commission's 2011 Report.

Because Ingram has failed to prove his § 2255 motion is timely under § 2255(f)(4) and concedes that it is untimely under § 2255(f)(1), we hold that Ingram's § 2255 motion is time-barred.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————

---

[4]Because we hold that Ingram's § 2255 motion is time-barred, we need not reach whether Ingram's equal protection/selective enforcement claim is procedurally defaulted or analyze the claim on its merits.